IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BORIS BRYANT, DARREN MAYO, EDWARD PIERRE, LAWRENCE GRICE, KEVIN MCINTYRE, MAURICE GALIMORE, JAMES BROWN, CARLOS BEATTY, MARCUS PAREJO, LAMAR NEWTON, JOHN LUCAS, CARLTON SYKES, | § § § § § § § § § | |
| Plaintiffs | § § | NO. 4:08-CV-03744 |
| Vs. | § § | |
| FMC TECHNOLOGIES, INC., PROSTAFF PERSONNEL ACQUISITION CORP., | § § § | |
| Defendants. | § § | |

## DEFENDANT FMC TECHNOLOGIES, INC.'S ORIGINAL ANSWER AND OTHER DEFENSES

Subject to its Partial Motion to Dismiss Under Rule 12(b)(6), Defendant FMC Technologies, Inc. (FMCTI) files this Answer and Other Defenses to the Original Complaint (Complaint) filed by the plaintiffs Boris Bryant, Darren Mayo, Edward Pierre, Lawrence Grice, Kevin McIntyre, Maurice Galimore, James Brown, Carlos Beatty, Marcus Parejo, Lamar Newton, John Lucas, and Carlton Sykes.

## ANSWER

Without waiving its other defenses, FMCTI answers the Complaint in paragraphs that correspond by number to the paragraphs in the Complaint as follows:

## PARTIES

1.      FMCTI lacks knowledge or information sufficient to form a belief about the truth

of the allegations contained in paragraph 1 of Plaintiffs' Complaint, and therefore, they are denied.

2.      FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 2 of Plaintiffs' Complaint, and therefore, they are denied.

3.      FMCTI admits that subject matter jurisdiction is proper as alleged in Paragraph 3 of the Complaint, but denies violating any laws that support a claim for relief by the plaintiffs.

4.      FMCTI admits that this Court has supplemental jurisdiction over the plaintiffs' state law claims as alleged in Paragraph 4 of the Complaint, but denies violating any laws that support a claim for relief by the plaintiffs.

5.      FMCTI admits that venue is proper as alleged in Paragraph 5 of the Complaint, but denies that violating any laws that support a claim for relief by the plaintiffs.

6.      FMCTI admits that each plaintiff was assigned to work at the FMCTI facility at various times.    Except as expressly admitted, FMCTI denies the allegations contained in paragraph 6 of the Complaint.

7.      Admitted.

8.      FMCTI admits that, at various times, the plaintiffs reported directly to FMCTI managers and leads, reported to human resource managers of FMCTI, received day-to-day orders from FMCTI personnel, received performance evaluations from FMCTI personnel, and had their hours, vacations, schedules, and hourly pay set by FMCTI.  FMCTI also admits that, at various times, it had authority to discipline the plaintiffs.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 8 of the Complaint.

9.      FMCTI admits that Pro Staff operates in Texas.  FMCTI admits that Bryant,

- 2 -

Pierre, Grice, McIntyre, Galimore, Brown, Beatty, Parejo, Lucas, and Sykes were each hired by Pro Staff and assigned to work at an FMCTI site at various times.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 9 of Plaintiffs' Complaint.

      10.    Denied.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

      11.    Denied.

## STATEMENT OF FACTS

### *Boris Bryant*

      12.    FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 12 of the Complaint, and therefore, they are denied.

      13.    FMCTI admits, during the period alleged by Bryant, Bryant worked at its plant located at 1777 Gears Road, Houston, Texas, since March 2001.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 13 of the Complaint.

      14.    FMCTI admits that it hired Bryant as a full-time Assembler.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 14 of the Complaint.

      15.    Denied.

      16.    FMCTI admits that Bryant was transferred from Low Bay to Hi Bay on December 12, 2002.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 16 of the Complaint.

      17.    Denied.

      18.    Denied.

      19.    FMCTI admits that Bryant complained to Michelle Risinger about a radio incident involving Shanna Williams (incorrectly referred to as "Shannon" in the Complaint), a

lead, and that Risinger advised the plaintiff that she would investigate his allegations. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 19 of the Complaint.

20.    FMCTI admits that Bryant complained to Michelle Risinger about an incident involving Shanna Williams (incorrectly referred to as "Shannon" in Plaintiffs' Complaint). FMCTI denies that Bryant complained to Vicki Vargas and Debra Grey.  FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 20 of the Complaint, and therefore, they are denied.

21.    Denied.

22.    Denied.

23.    FMCTI denies that Bryant complained to Michelle Risinger and Vicky Vargas regarding his allegations contained in paragraph 23 of the Complaint. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations contained in paragraph 23 of the Complaint, and therefore, they are denied.

24.    FMCTI denies that applicants for lead positions were selected for positions prior to interviews being held. FMCTI denies that persons selected for lead positions were not qualified for the positions. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations contained in paragraph 24 of the Complaint, and therefore, they are denied.

25.    Denied.

26.    FMCTI admits that Bryant carpooled with an individual named Brad Hooker. FMCTI admits that Bryant was subject to disciplinary action for being tardy.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 26 of the Complaint.

27.    FMCTI admits that Bryant applied for a lead position in 2006.  FMCTI denies

- 4 -

that a non-African American employee with less experience than Bryant was chosen for this position. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations contained in paragraph 27 of the Complaint, and therefore, they are denied.

28.     FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 28 of the Complaint, and therefore, they are denied.

29.     FMCTI admits that Bryant applied for the position of Service Technician and was not offered a promotion. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 29 of the Complaint.

30.     FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that, in September 2007, Bryant saw Lead James Bryan looking at Ku Klux Klan and other white supremacists, racist websites on the job, and therefore, it is denied. Except as expressly admitted, FMCTI denies the remainder of the allegations contained in paragraph 30 of the Complaint.

31.     FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 31 of the Complaint, and therefore, they are denied.

32.     FMCTI admits that an alleged noose was reportedly found in a warehouse on September 24, 2007. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 32 of the Complaint.

33.     FMCTI admits that an alleged noose was reported being found on October 25, 2007, in Hi Bay. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that Bryant complained to Wendell Deboskie (incorrectly spelled "Deborski" in the Complaint); therefore, it is denied. Except as expressly admitted, FMCTI

- 5 -

denies the allegations contained in paragraph 33 of the Complaint.

34.   FMCTI admits a mutual respect training class was held with its employees during which time a video was presented in which the word "nigger" was stated.  Except as expressly admitted, FMCTI denies the allegations contained in Paragraph 34 of the Complaint.

35.   Denied.

36.   Denied.

37.   FMCTI admits that an alleged noose was reported as being found on May 17, 2008.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 37 of the Complaint.

*Darren Mayo*

38.   Admitted.

39.   FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 39 of the Complaint, and therefore, they are denied.

40.   FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 40 of the Complaint, and therefore, they are denied.

41.   FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 40 of the Complaint, and therefore, they are denied.

42.   FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 42 of the Complaint, and therefore, they are denied.

43.   Denied.

44.   Denied.

45.   Denied.

46.   Denied.

- 6 -

47.     Denied.

48.     FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 48 of the Complaint, and therefore, they are denied.

49.     FMCTI admits that Roy Bolton, a non-African American, became a team lead. Except as expressly admitted, FMCTI denies the allegations contained in Paragraph 49 of the Complaint.

50.     FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 50 of the Complaint, and therefore, they are denied.

51.     FMCTI admits that an alleged noose was reported being found on October 25, 2007. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 51 of the Complaint.

52.     FMCTI admits that, during a mandatory training session in January 2008, a video was presented in which the word "nigger" was stated. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 52 of the Complaint.

53.     FMCTI admits that Mayo complained to Jon Troxell in February 2008 about a black glove he alleged to have found in a desk drawer. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 53 of the Complaint.

54.     FMCTI admits that Mayo sent an email to Michelle Risinger on or about February 22, 2008, in which he complained that he was offended by the glove found and expressed disappointment regarding what he perceived to be a lack of response to his complaint and complained that there was no stand down meeting. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that Mayo complained about "the fact that there was no 'stand down' meeting to discuss it, especially in light of the noose incidents."

- 7 -

Except as expressly admitted, FMCTI denies the allegations contained in paragraph 54 of the Complaint.

54.    FMCTI admits that Mayo, Susan Webb, Jon Troxell, and Brian Janak met on or about February 27, 2008, to address his complaint about the glove.  FMCTI admits that Webb acknowledged that there was a delay in responding to Mayo's complaint.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 55 of the Complaint.

56.    FMCTI admits that an alleged noose was reported as being found in Hi Bay on May 17, 2008, and that management held a meeting to discuss the alleged incident on May 19, 2008. FMCTI admits that Mayo took a leave of absence.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 56 of the Complaint.

57.    FMCTI admits that Jon Troxell spoke with Mayo during his leave.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 57 of the Complaint.

58.    FMCTI admits that Mayo reports to Jon Troxell.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 58 of the Complaint.

59.    Denied.

### Edward Pierre

60.    FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 60 of the Complaint, and therefore, they are denied.

61.    FMCTI admits that Pierre began working at its facility as an employee of ProStaff in April 2007.   Except as expressly admitted, FMCTI denies the allegations contained in paragraph 61 of the Complaint.

62.    FMCTI admits that Plaintiff Edward Pierre reported a finger injury in May 2007. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 62 of the

Complaint.

63.     FMCTI admits that Pierre applied for full-time employment with FMCTI. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 63 of the Complaint.

64.     FMCTI admits that Pierre reported finding an alleged noose on October 25, 2007, in the workplace. FMCTI admits that Lamar Newton also reported seeing the alleged noose and that Newton contacted Joe McHenry, Low Bay team leader, who responded to Newton's report. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 60 of the Complaint, and therefore, they are denied. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 64 of the Complaint.

65.     FMCTI admits that James Bryan informed Roy Bolton, Hi Bay team leader, of the purported noose and that Bryan cut the alleged noose from the tag line. Except as expressly admitted, FMCTI denies the remaining allegations contained in paragraph 65 of the Complaint.

66.     FMCTI admits that Wendell Deboskie (incorrectly spelled as "Deborski" in the Complaint) asked Pierre questions about the incident on the day of the incident. FMCTI further admits that Vicki Vargas and Paige Fuller subsequently interviewed Pierre as part of FMCTI's incident investigation. FMCTI further admits that Pierre submitted a written statement as part of FMCTI's incident investigation. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 66 of the Complaint.

67.     Denied.

68.     FMCTI admits that Pierre met with Susan Webb in 2008. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 68 of the Complaint.

69.     FMCTI admits that Pierre filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Except as expressly admitted, FMCTI denies

the allegations in contained in paragraph 69 of the Complaint.

70.     FMCTI admits that Susan Webb and Paige Fuller met with Pierre in March 2008 as part of FMCTI's investigation of Pierre's EEOC charge. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 70 of the Complaint.

*Lawrence Grice*

71.     FMCTI admits that Grice began working at its site on or about March 15, 2001. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 71 of the Complaint.

72.     FMCTI admits that Grice applied for an Assembler II position in July 2006. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 72 of the Complaint.

73.     FMCTI admits that Grice was transferred from the Hi Bay area of the subsea assembly department to the direct vertical access assembly department on October 16, 2006. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 73 of the Complaint.

74.     Denied.

75.     FMCTI admits that an alleged noose was reported being found on October 25, 2007, lying on the floor and tied to a tag line attached to equipment in Hi Bay. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that Grice was told about the alleged noose by Wendell Deboskie (incorrectly spelled as Deborski in the Complaint), and therefore, they are denied. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 75 of the Complaint.

76.     Denied.

77. Denied.

78. FMCTI denies that Grice reported any conduct of Stanley Norris to Bryan Sangster. FMCTI denies that several employees complained to human resources regarding Norris. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 78 of the Complaint, and therefore, they are denied.

79. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 79 of the Complaint, and therefore, they are denied.

80. FMCTI admits that Grice had an annual performance and development discussion with Eric Trammel in 2008. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 80 of the Complaint, and therefore, they are denied.

81. FMCTI admits that Grice complained that he should be promoted to the position of Assembler IV. FMCTI admits that Eric Trammel explained that he did not have knowledge of any promise by his predecessor Heath Herren (incorrectly spelled "Herring" in the Complaint), and that he would refer the matter to his supervisor Eric Heuring (incorrectly spelled "Herring" in Complaint). Except as expressly admitted, FMCTI denies the allegations contained in paragraph 81 of the Complaint.

82. FMCTI admits that Grice presented a letter to Eric Heuring (incorrectly spelled as "Herring" in the Complaint) at a meeting where Trammel and Mayo were also present. FMC further admits that this letter complained of discrimination and harassment. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 82 of the Complaint.

83. FMCTI admits that Grice met with Risinger and discussed the Assembler IV position he sought. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 83 of the Complaint.

84.     FMCTI admits that Grice requested Risinger's notes of their discussion, and Risinger declined Grice's request. FMCTI admits that Grice is not an Assembler IV. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 84 of the Complaint.

85.     FMCTI admits that an alleged noose was reported as being found on May 17, 2008 in High Bay. FMCTI admits that management met with and communicated with employees regarding the incident. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 85 of the Complaint.

86.     FMCTI admits that Grice complained to FMCTI about alleged comments made by an individual employed by a contractor on June 25, 2008. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 86 of the Complaint.

87.     Denied.

88.     FMCTI admits that Grice was given a training manual. Except as expressly admitted, FMCTI denies the allegations contained paragraph 88 of the Complaint.

89.     FMCTI admits that an incident occurred between Grice and a non-African American coworker on December 12, 2008. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 89 of the Complaint.

90.     FMCTI admits that a non-African American coworker made remarks that Grice reported to FMCTI. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 90 of the Complaint.

91.     FMCTI admits that Grice complained to FMCTI about these comments. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 91 of the Complaint.

*Kevin McIntyre*

92.     Admitted.

93.     FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 93 of the Complaint, and therefore, they are denied.

94.     FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 94 of the Complaint, and therefore, they are denied.

95.     Denied.

96.     Denied.

97.     FMCTI admits that it hired McIntyre as a full-time employee in 2007.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 97 of the Complaint.

98.     FMCTI admits that an alleged noose was reported being found on October 25, 2007, in the workplace.  FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 98 of the Complaint, and therefore, they are denied.

99.     FMCTI admits a mutual respect training class was held with its employees during which time a video was presented in which the word "nigger" was stated.  Except as expressly admitted, FMCTI denies the allegations contained in Paragraph 99 of the Complaint.

100.    FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 100 of the Complaint, and therefore, they are denied.

101.    FMCTI admits that McIntyre is an Assembly Technician I.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 101 of the Complaint.

*Maurice Galimore*

102.    FMCTI admits that Galimore was assigned by ProStaff to its site on or about December 21, 2006.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 102 of the Complaint.

103. Denied.

104. FMCTI admits that Galimore submitted an application for employment with FMCTI. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 104 of the Complaint.

105. Denied.

106. FMCTI admits that Bret Mohn (incorrectly spelled "Brett" in the Complaint) told Galimore and Willy Howard to return to work from their break. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 106 of Complaint.

107. Denied.

108. Denied.

109. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 109 of the Complaint, and therefore, they are denied.

110. Denied.

111. FMCTI admits a mandatory mutual respect training class was held with its employees during which time a video was presented in which the word "nigger" was stated. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 111 of the Complaint.

112. FMCTI admits that it held a party for James Faucett, a manager. FMCTI admits that a photograph of James Faucett wearing a hat was displayed on tables at the party. FMCTI lacks knowledge of information sufficient to form a belief about the truth of the allegations that a picture of James Faucett wearing a hat was displayed in the Pro Staff office and on the "Why I Work Safely" board in the Low Bay, and therefore, they are denied. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 112 of the Complaint.

- 14 -

113.    Denied.

114.    FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 114 of the Complaint, and therefore, they are denied.

115.    Denied.

116.    FMCTI admits that Paige Fuller and Susan Webb met with Galimore on or about March 25, 2008. FMCTI admits that Galimore alleged to Fuller and Webb that an alleged noose was located on Roy Bolton's desk and alleged racist websites were being viewed in the workplace. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 116 of the Complaint.

117.    FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that Susan Webb met with Galimore in May 2008, and therefore, it is denied. FMCTI admits the remainder of the allegations contained in paragraph 117 of the Complaint.

118.    FMCTI admits that an alleged noose was reported as being found in the workplace on May 17, 2008. FMCTI admits that it advised employees that the Company was investigating this alleged incident. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that Galimore saw the alleged noose, and therefore denies that allegation. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 118 of the Complaint.

119.    Denied.

120.    FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 120 of the Complaint, and therefore, they are denied.

121.    Denied.

122.    FMCTI admits that Leon Acosta has a spider web tattoo on his elbow that is

- 15 -

visible to other employees. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 122 of the Complaint.

*James Brown*

123. FMCTI admits Brown began working at its site on or about March 10, 2006, as an Assembler. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 123 of the Complaint.

124. FMCTI denies that Louis Brown (incorrectly spelled "Lewis" in the Complaint) was present when Stanley Norris made the alleged reference to James Byrd. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 124 of the Complaint, and therefore, they are denied.

125. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 125 of the Complaint, and therefore, they are denied.

126. FMCTI admits that Brown applied for full-time employment with FMCTI. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 126 of the Complaint.

127. FMCTI admits that it hired Brown as a full-time employee in February 2007. FMCTI further admits that Brown and McIntyre were required to retest their urine samples because the lab report showed they were diluted. FMCTI admits that Brown and McIntyre were not cleared for work until they retested, and that they were given a start date consistent with when they began their position. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 127 of the Complaint.

128. Denied.

129. FMCTI admits that in 2007 Stanley Norris asked James Brown, "who has you

nigger-rigging this?" FMCTI further admits that James Brown complained to his lead, Louis Brown (incorrectly spelled "Lewis" in the Complaint) about the comment and that Louis Brown was stunned. FMCTI further admits that Louis Brown reported the comment to Eric Trammel, who spoke with Stanley Norris about the comment. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in paragraph 129 of the Complaint, and on that basis denies any allegations not expressly admitted.

130. Denied.

131. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 131 of the Complaint, and therefore, they are denied.

132. FMCTI admits that its human resources department received a letter from Brown regarding restroom graffiti. FMCTI admits that Patsy Livingston interviewed Brown and informed him that it had become aware of the restroom graffiti several days before the human resources department received Brown's letter. FMCTI admits that Livingston asked Brown why he assumed that nothing was being done. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 132 of the Complaint.

### *Carlos Beatty*

133. FMCTI admits Beatty began working at its site in or around October 2005 as an Assembler. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 133 of the Complaint.

134. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that in the Spring of 2006, Plaintiff's Caucasian coworker, Stanley Norris, told Beatty that an African American employee was "not a nigger, but a creole nigger." Except as expressly admitted, FMCTI denies the remaining allegations contained in paragraph 134 of the

Complaint.

135.    FMCTI denies that Louis Brown (incorrectly spelled "Lewis" in the Complaint) was present when Stanley Norris made the purported reference to James Byrd.  FMCTI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 135 of the Complaint, and therefore, they are denied.

136.    FMCTI admits that Beatty applied for full-time employment with FMCTI. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 136 of the Complaint.

137.    FMCTI admits that it hired Beatty as a full-time employee in February 2007. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 137 of the Complaint.

138.    Denied.

139.    FMCTI admits that an alleged noose was reported as being found on May 17, 2008.  FMCTI admits that it informed employees that it was investigating the alleged incident. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 139 of the Complaint.

140.    Denied.

141.    Denied.

*Marcus Parejo*

142.    FMCTI admits Parejo began working at its site in July 2006.  FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegation that Parejo is from Trinidad & Tobago, and therefore, it is denied.  Except as expressly admitted, FMCTI denies the allegations contained in paragraph 142 of the Complaint.

143. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 143 of the Complaint, and therefore, they are denied.

144. FMCTI admits that Parejo applied for a full-time position. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 144 of the Complaint.

145. Denied.

146. FMCTI admits that Parejo asked to practice in the weld shop. FMCTI further admits that Heath Herren (incorrectly spelled as "Heuring" in the Complaint) would not permit Parejo to do so because FMCTI could not pay Parejo for this time. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 146 of the Complaint.

147. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations that Parejo is currently attending Lone Star College and majoring in welding, and therefore, they are denied. FMCTI denies the remaining allegations contained in paragraph 147 of the Complaint.

148. Denied.

149. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 149 of the Complaint, and therefore, they are denied.

150. Denied.

151. Denied.

152. FMCTI admits that Parejo reported that his locker door was purportedly tampered, with a Trinidadian flag turned upside down and "Cuba is #1" written on the locker. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 152 of the Complaint.

153. FMCTI admits that Parejo spoke with interim welding manager Stuart Stout

- 19 -

(incorrectly spelled "Steward" in the Complaint). Except as expressly admitted, FMCTI denies the allegations contained in paragraph 153 of the Complaint.

154. FMCTI admits that a welder position was available in the welding shop in July 2008. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 154 of the Complaint.

155. Denied.

156. Denied.

157. Denied.

158. Denied.

*Lamar Newton*

159. FMCTI admits Newton was assigned by E-Flex to its site in May 2007, as an Assembler. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 159 of the Complaint.

160. Denied.

161. FMCTI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 161 of the Complaint, and therefore, they are denied.

162. FMCTI admits that Newton reported to Joe McHenry that he found an alleged noose in the Hi Bay. FMCTI admits that management and human resources became aware of the allegations. FMCTI admits that Webb interviewed Newton and took his statement. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 162 of the Complaint.

163. FMCTI admits a mutual respect training class was held with its employees during which time a video was presented in which the word "nigger" was stated. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 163 of the Complaint.

164. Denied.

165. FMCTI admits that Newton was accepted into an apprenticeship program, which he began in March. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 165 of the Complaint.

166. Denied.

167. FMCTI admits that John Troxell advised employees that racist graffiti in the bathroom was not acceptable. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 167 of the Complaint.

168. Denied.

169. Denied.

*John Lucas*

170. Admitted.

171. FMCTI admits that Lucas' start date as an employee of FMCTI was January 23, 2006 and that he was hired as an Assembler I. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 171 of the Complaint.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. FMCTI admits that Chris Aaron, a non-African American employee, was promoted to lead. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 176 of the Complaint.

177. Denied.

- 21 -

178.   Denied.

179.   FMCTI admits that it restructured shifts. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 179 of the Complaint.

180.   FMCTI admits that an alleged noose was reported as being found in the workplace in October 2007. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 180 of the Complaint.

181.   FMCTI admits a mutual respect training class was held with its employees during which time a video was presented in which the word "nigger" was stated. FMCTI admits that Lucas and another employee walked out of the presentation. FMCTI further admits that Lucas complained to Human Resources about the video. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 181 of the Complaint.

182.   FMCTI admits that Lucas met with Steve Barrett and expressed concerns regarding the video presentation. FMCTI admits that a modified video was shown to employees. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 182 of the Complaint.

183.   Denied.

184.   FMCTI admits that, in March 2008, employees met individually with professionals from Pope & Associates who provided information and feedback to FMCTI regarding the results of its cultural survey of FMCTI employees. FMCTI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations that Lucas met with a Pope & Associates professional and "complained extensively about how segregated FMCTI was, about the threats, retaliation and harassment, and about how the atmosphere was gotten (sic) much worse since the nooses were found," and therefore these allegations are denied. FMCTI

- 22 -

also lacks knowledge or information sufficient to form a belief regarding the truth of the allegation that the Pope & Associate professional told Lucas that she would forward his complaints to management for resolution, and therefore, it is denied. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 184 in the Complaint.

185.    Denied.

*Carlton Sykes*

186.    FMCTI admits that Sykes was assigned to work at the FMCTI facility in 2006 as an assembly technician. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 186 of the Complaint.

187.    FMCTI admits that Sykes reported being injured on the job in September 2006. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 187 of the Complaint.

188.    Denied.

189.    Denied.

190.    FMCTI admits that it hired Sykes as a full-time employee in March 2007. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 190 of the Complaint.

191.    FMCTI admits that in mid-2007, Sykes would have been in his position for less than a year and therefore ineligible for a "Planner I" position. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 191 of the Complaint.

192.    Denied.

193.    FMCTI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 193 of the Complaint, and on that basis they are denied.

194.    FMCTI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 194 of the Complaint, and on that basis they are denied.

195.    FMCTI admits a mutual respect training class was held with its employees during which time a video was presented in which the word "nigger" was stated. Except as expressly admitted, FMCTI denies the allegations contained in paragraph 195 of the Complaint.

### FIRST CLAIM FOR RELIEF
### Race Discrimination (Title VII)
### (All Plaintiffs as to Defendant FMC)

196.    FMCTI incorporates by reference each of its responses made in this Answer to the allegations contained in paragraph 1 through 195 of the Complaint.

197.    Denied.

198.    Denied.

199.    Denied.

200.    Denied.

201.    Denied.

202.    Denied.

### SECOND CLAIM FOR RELIEF
### Race Discrimination (Title VII)
### (Plaintiffs Parejo, Pierre, and Galimore as to Defendant Pro Staff)

203.    FMCTI incorporates by reference each of its responses made in this Answer to the allegations contained in paragraph 1 through 195 of the Complaint.

204.    Denied.

205.    Denied.

206.    Denied.

207.    Denied.

- 24 -

208.   Denied.

209.   Denied.

## THIRD CLAIM FOR RELIEF
### Retaliation (Title VII)
### (All Plaintiffs as to Defendant FMC)

210.   FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

211.   Denied.

212.   Denied.

213.   Denied.

214.   Denied.

215.   Denied.

216.   Denied.

## FOURTH CLAIM FOR RELIEF
### Retaliation (Title VII)
### (Plaintiffs Parejo, Pierre and Galimore as to Defendant Pro Staff)

217.   FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

218.   Denied.

219.   Denied.

220.   Denied.

221.   Denied.

222.   Denied.

223.   Denied.

## FIFTH CLAIM FOR RELIEF
### Race Discrimination in Violation of Public Policy (Common Law)

- 25 -

(All Plaintiffs as to Defendant FMC)

224.   FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

225.   Denied.

226.   Denied.

227.   Denied.

228.   Denied.

229.   Denied.

230.   Denied.

## SIXTH CLAIM FOR RELIEF
### Race Discrimination in Violation of Public Policy (Common Law)
(Plaintiffs Parejo, McIntyre, Brown, Beatty, Pierre, Galimore, Sykes and Lucas as to Defendant
Pro Staff)

231.   FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

232.   Denied.

233.   Denied.

234.   Denied.

235.   Denied.

236.   Denied.

237.   Denied.

## SEVENTH CLAIM FOR RELIEF
### Retaliation In Violation of Public Policy (Common Law)
(All Plaintiffs as to Defendant FMC)

238.   FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

239. Denied.

240. Denied.

241. Denied.

242. Denied.

243. Denied.

244. Denied.

## EIGHTH CLAIM FOR RELIEF
### Retaliation In Violation of Public Policy (Common Law)
(Plaintiffs Parejo, McIntyre, Brown, Beatty Pierre, Galimore, Sykes and Lucas
as to Defendant Pro Staff)

245. FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

246. Denied.

247. Denied.

248. Denied.

249. Denied.

250. Denied.

251. Denied.

## NINTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress (Common Law)
(All Plaintiffs as to Defendant FMC)

252. FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

253. Denied.

254. Denied.

255. Denied.

256.    Denied.

## TENTH CLAIM FOR RELIEF
Intentional Infliction of Emotional Distress (Common Law)
(Plaintiffs Parejo, McIntyre, Brown, Beatty, Pierre, Sykes and Lucas as to Defendant Pro Staff
Defendant Pro Staff (sic))

257.    FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

258.    Denied.

259.    Denied.

260.    Denied.

261.    Denied.

## ELEVENTH CLAIM FOR RELIEF
National Origin Discrimination (Title VII)
(Plaintiff Parejo as to Defendants FMC and Pro Staff)

262.    FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

263.    Denied.

264.    Denied.

265.    Denied.

266.    Denied.

267.    Denied.

268.    Denied.

## TWELFTH CLAIM FOR RELIEF
Discrimination – Hostile Work Environment (Title VII)
(All Plaintiffs as to Defendant FMC)

269.    FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

270.   Denied.

271.   Denied.

272.   Denied.

273.   Denied.

274.   Denied.

275.   Denied.

THIRTEENTH CLAIM FOR RELIEF
Discrimination - Hostile Work Environment (Title VII)
(Plaintiffs Parejo, Pierre and Galimore as to Defendant Pro Staff)

276.   FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

277.   Denied.

278.   Denied.

279.   Denied.

280.   Denied.

281.   Denied.

282.   Denied.

FOURTEENTH CLAIM FOR RELIEF
Race Discrimination (Texas Labor Code Section 21.051)
(All Plaintiffs as to Defendant FMC)

283.   FMCTI incorporates by reference each of its responses made in this Answer to the

allegations contained in paragraph 1 through 195 of the Complaint.

284.   Denied.

285.   Denied.

286.   Denied.

287. Denied.

288. Denied.

289. Denied.

### FIFTEENTH CLAIM FOR RELIEF
Race Discrimination (Texas Labor Code Section 21.052)
(Plaintiffs Parejo, Pierre and Galimore as to Defendant Pro Staff)

290. FMCTI incorporates by reference each of its responses made in this Answer to the allegations contained in paragraph 1 through 195 of the Complaint.

291. Denied.

292. Denied.

293. Denied.

294. Denied.

295. Denied.

296. Denied.

### DEMAND FOR JURY TRIAL

297. A responsive pleading is not required in response to the averment in paragraph 297 of the Complaint; therefore, it is denied or avoided.

298. FMCTI denies that the plaintiffs are entitled to any of the relief requested in paragraph 298 of the Complaint and all of its subparts and their prayer for the amount of damages they seek.

### OTHER DEFENSES

#### FIRST DEFENSE

FMCTI alternatively pleads that the claims should be dismissed, in whole or in part, for failure to state a claim upon which relief may be granted.

## SECOND DEFENSE

FMCTI alternatively pleads that the plaintiffs' claims are barred, in whole or in part, by the applicable administrative prerequisites and/or statutes of limitations.

## THIRD DEFENSE

FMCTI alternatively pleads that FMCTI was not the plaintiffs' employer at all times and that any adverse employment action against any plaintiff during those times cannot be attributed to FMCTI.

## FOURTH DEFENSE

FMCTI alternatively pleads that it is not liable for acts, if any, by employees that were not authorized by FMCTI, and those employees had no express or implied authority to engage in acts that were inconsistent with FMCTI's written rules prohibiting conduct constituting unlawful discrimination, harassment, or retaliation.

## FIFTH DEFENSE

FMCTI alternatively pleads that improper acts, if any, by certain individuals employed by or associated with FMCTI were beyond the course and scope of employment, and FMCTI is not responsible for those actions.

## SIXTH DEFENSE

FMCTI alternatively pleads that each plaintiff failed to mitigate his alleged damages in whole or in part.

## SEVENTH DEFENSE

Each Plaintiffs' claims for punitive damages, if any, is barred as being unconstitutional and unavailable.

## EIGHTH DEFENSE

- 31 -

FMCTI alternatively pleads that it is not liable for punitive damages, if any, because it did not commit any knowing, willful, intentional, or malicious acts against any plaintiff.

### NINTH DEFENSE

Each of the plaintiff's claims for compensatory and punitive damages and other relief are subject to all applicable statutory caps and limitations.

### TENTH DEFENSE

FMCTI alternatively pleads that each plaintiff's claims are barred, or his recovery should be offset, by the after-acquired evidence doctrine, if applicable.

### ELEVENTH DEFENSE

FMCTI's employment actions taken with respect to each plaintiff would have been necessary in the absence of any allegedly impermissible factors.

### TWELFTH DEFENSE

FMCTI alternatively pleads that it made a good faith effort to comply with Title VII and all other equal employment opportunity obligations and requirements.

### THIRTEENTH DEFENSE

FMCTI alternatively pleads that it exercised reasonable care to prevent and correct promptly any discriminatory behavior and that each plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by FMCTI or to otherwise avoid harm.

### FOURTEENTH DEFENSE

FMCTI alternatively pleads that it has a widely-disseminated anti-discrimination policy which each plaintiff unreasonably failed to follow.

### FIFTEENTH DEFENSE

No plaintiff can recover actual and punitive damages under multiple or different theories and causes of action for the same or similar acts. Each plaintiff is entitled to only one remedy for his claims.

SIXTEENTH DEFENSE

FMCTI alternatively pleads that claims made by plaintiffs are barred, in whole or in part, by the doctrines of res judicata and collateral estoppel.

SEVENTEENTH DEFENSE

FMCTI is entitled to an offset for all interim compensation or income received by each plaintiff.

FMCTI reserves the right to file and serve additional affirmative defenses as appropriate after an opportunity to engage in discovery.

RELIEF REQUESTED

For these reasons, FMCTI respectfully requests that the Court enter judgment that each plaintiff take nothing, dismiss each plaintiff's suit with prejudice, assess costs and attorneys' fees against each plaintiff, and award FMCTI such other and further relief, general or special, legal or equitable, to which it may show itself justly entitled.

Respectfully submitted,

Of Counsel:

Tim McInturf
State Bar No. 00788020
Federal ID No. 18058
Melissa Judd
State Bar No. 24032945
Federal ID No. 32408
Sarah Stoffregen
State Bar No. 24066151
Federal ID No. 966164
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

*/s/ Kerry E Notestine*
Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal ID No. 2423
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

ATTORNEYS FOR DEFENDANT
FMC TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

I certify that I sent a copy of Defendant FMC Technologies, Inc.'s Original Answer and Other Defenses to the following via electronic means, through the Court's electronic filing system, on this 9th day of March 2009:

Joshua D. Boxer
LAW OFFICES OF MAYOR JOSEPH L. ALIOTO & ANGELA ALIOTO
700 Montgomery Street
San Francisco, CA 94111

W. Jackson Wisdom
James M. Cleary, Jr.
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, TX 77002

*/s/ Sarah Stoffregen*
Sarah Stoffregen

Firmwide:88153921.2 042176.1117

- 35 -