IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BORIS BRYANT, DARREN MAYO, EDWARD PIERRE, LAWRENCE GRICE, KEVIN MCINTYRE, MAURICE GALIMORE, JAMES BROWN, CARLOS BEATTY, MARCUS PAREJO, LAMAR NEWTON, JOHN LUCAS, CARLTON SYKES,<br><br>  Plaintiffs<br><br>vs.<br><br>FMC TECHNOLOGIES, INC., ET AL.,<br><br>  Defendants. | NO. 04:08-CV-03744 |

## DEFENDANT PRO STAFF'S OBJECTIONS TO PLAINTIFFS' SUMMARY JUDGMENT OPPOSITION EVIDENCE

Defendant Dobbs Temporary Services, Inc. d/b/a Pro Staff Personnel Services, improperly named as Pro Staff Personnel Acquisition Corp. ("Pro Staff"), objects to certain parts of Plaintiffs' summary judgment opposition evidence, as follows:

## I.
## INTRODUCTION

Many of Plaintiffs' "factual" statements are not supported by the evidence, and in fact, misrepresent the evidence they reference. In addition, one declaration must be struck because it contradicts the affiant's deposition testimony.

## II.
## OBJECTIONS

Plaintiffs misrepresent the record on numerous occasions, including the following:

**A. Plaintiffs' Statement of "Facts"**

  1. Page 3, First Paragraph: "FMC and Prostaff later determined that Prostaff

employees were responsible."[1] In support of this statement, they cite to a FMC investigative report and the deposition testimony of Pro Staff employee Gina Smoot. Neither piece of evidence supports this statement. In fact, Smoot testified, not that a Pro Staff employee was responsible for the September 2007 noose, but rather *witnessed* it once it was already placed on the facility. Plaintiffs' Index of Exhibits Submitted in Opposition to Defendant FMC's Motion for Summary Judgment and Defendant Prostaff's Motion for Summary Judgment ("Plaintiffs' Index") at Exhibit R at 78 ("there was a Prostaff talent that saw it").

2. Page 3, First Paragraph: "At the time, one of the Prostaff employees responsible, Samuel Ruth, informed Prostaff about other employees making racial slurs in the workplace." In support of this statement, Plaintiffs cite to an exhibit to the deposition of Wendell Deboskie. Plaintiff's Index at Exhibit E at Exhibit 310. That document does not support this statement. While Ruth states in the document that he heard others make "racial jokes," nowhere does it state that Ruth reported these complaints to Pro Staff.

3. Page 3, First Paragraph: "While its own employees were involved, Prostaff's HR manager, Gina Smoot, was not aware of any investigations into either of these nooses." Plaintiffs imply that Pro Staff did not take the noose incidents seriously and did not participate in the investigation of them. However, Smoot was an on-site talent manager, responsible for "[r]ecruiting, counseling, building relationships with the client and sales, talent – marketing our talent that we have, trying to build business." *See* Exhibit "A" at 12. Investigating the noose incidents was not part of her job responsibilities – that fell to Pro Staff on-site management, Client Relations Director Paige Fuller or Client Operations Manager Elizabeth Cashiola. *See id.* at 81, 13-14.

---

[1] This misrepresentation of the evidence is repeated in the first full paragraph of page 4.

2

4. Page 4, First Paragraph: "Even though their own employees were responsible for the noose incident, Prostaff tried to use the racial incident as an opportunity to push FMC for more business, instead of helping to improve the environment." First, as explained above, Pro Staff's employees were not responsible for any of the noose incidents and Plaintiffs have submitted no evidence to the contrary. Second, the second half of Plaintiffs' statement is a misrepresentation of the very evidence they cite in support of the statement. When asked if she attempted to use this occasion to solicit more business from FMC, Pro Staff Client Relations Director Paige Fuller stated "not in this situation" and that was not the intent of this email. Plaintiffs' Index at Exhibit F at 145. When asked directly if Pro Staff was trying to get more contracts from FMC, Fuller responded "[t]hat wasn't the intent of this e-mail." *Id.*

5. Page 4, Third Paragraph, n.2: "Plaintiff was not hired full-time for over a year, while non-African Americans ... got hired within six months."[2] Plaintiff Pierre implies his inability to go direct with FMC Technologies, Inc. ("FMCTI") was due to not completing F.A.T. training, but the uncontroverted evidence is that he became employed by FMCTI shortly after he applied for the first time for employment with FMCTI. Pro Staff Motion for Summary Judgment Appendix ("Pro Staff Appendix") "H" at 216.

6. Page 5, First Paragraph: "Plaintiff's complaint, however, were met with intimidation and ridicule by Paige Fuller."[3] First, one of the cites in support of this statement has nothing to do with a conversation with Fuller. In regards to the other cite, it is clear from Pierre's deposition transcript that he and Fuller simply disagreed about the type of training that would be appropriate after the October 2007 noose incident. *Id.* at 240-41.

---

[2] Plaintiffs repeat this contention on Page 22, Last Paragraph.

[3] Plaintiffs repeat this allegation on Page 24, Third Paragraph.

3

7. Page 5, Fourth Paragraph: "While still a Prostaff employee, Sykes complained to Prostaff managers, Gina Smoot and Elizabeth, telling them about all of the complaints he had made, and what it was like to be a black man at FMC." The first evidentiary cite supporting this statement refers to a job fair at Sam Houston Race Park in which he ran into two Pro Staff employees. Further, Sykes made it clear during his deposition that he did not know if he was a Pro Staff employee at this point or not. *See* Plaintiffs' Index at Exhibit S at 185; *see also* Pro Staff Appendix at Exhibit "I" at 227. However, the uncontroverted evidence is that this job fair conversation occurred *after* he became a FMC employee. Pro Staff Appendix at Exhibit "A" at ¶ 9.

8. Page 9, Second Paragraph: "There were, however, welder positions available, despite what he was told."[4] This is a misrepresentation on two levels. First, while Parejo testified that welders were hired, he did not know if they were hired by Pro Staff or directly by FMC. Plaintiffs' Index at Exhibit O at 199. Second, he conceded that he had no evidence that Pro Staff hired any welders within thirty days after he accepted the assembly tech position. *Id.* at 200.

9. Page 9, Fourth Paragraph: "According to Gina Smoot, Prostaff employees can participate, but that participation is by "invitation only." To the extent Plaintiffs imply that Pro Staff issues the invitations, that is flatly contradicted by the evidence; FMCTI issues those invitations. Plaintiffs' Index at Exhibit R at 38.

10. Page 10, Seventh paragraph: "These tattoos were clearly visible to FMC and Prostaff supervisors." The evidence in support of this sentence does not make any reference to who employed the supervisors, just that "supervisors" witnessed it.

11. Page 11, First Paragraph: "However, various Caucasian employees were allowed

---

[4] Plaintiffs repeat this allegation on Page 22, Fourth Paragraph.

4

to work with relatives in the same department – Daniel Fife and Brian Sangster (cousins), John Matula and Stephen Matula (brothers)." The implication is that this was a Pro Staff decision, but Beatty admitted later in his deposition that he had no evidence that this was anything but the application of an FMC policy, and not a Pro Staff policy. Pro Staff Appendix at Exhibit "B" at 271.

**B.    Legal Analysis – Threats of Violence**

1. Page 16: "Astonishingly, Defendant took no action when Plaintiff Grice complained about it." The clear implication is that Grice complained to Pro Staff about this incident. However, his testimony makes it clear that he voiced his complaint to FMC, not Pro Staff. He made this complaint to Bryan Sangster, *see* Plaintiffs' Index at Exhibit Z at ¶ 7, a FMC manager. *See* Plaintiffs' Second Amended Complaint at ¶ 79.

**C.    Legal Analysis – Slurs & Epithets**

1. Page 17, Third Paragraph: "Defendant ProStaff knew about the profligate use of racial slurs since at least 2001, when the chief ProStaff representative on site, Elaine Jackson, warned Lawrence Grice about Norris: "You got to watch him, he is a racist." This comes from a declaration signed by Plaintiff Grice that directly contradicts his deposition testimony.

As this Court recently held, parties cannot defeat motions for summary judgment using affidavits that impeach, without explanation, sworn testimony. *Matthews v. Government Employees Ins. Co.*, 2010 WL 1644713, *5 (S.D. Tex. 2010) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 49, 495 (5th Cir. 1996)). While supplementation of deposition testimony may be permissible, when the affidavit "tells the same story differently," it is impermissible. *S.W.S. Erectors*, 72 F.3d at 496.

During his deposition, Grice gave very similar testimony with one key difference. When

asked if he heard any racist comments made by supervisors, Grice stated that one day while walking the floor with Elaine of Pro Staff, they saw Stanley Norris. Per his deposition testimony, Elaine allegedly said, "'Oh, I can't stand that man right there.' She say, 'You got to watch him.'" Exhibit "B" at 100.

Yet, his declaration contains a huge addition. After repeating the above language, he adds that Elaine allegedly went on to say that "he is a racist." Plaintiffs' Index at Exhibit Z at ¶ 4. Grice gave no reason in his declaration for why this key admission was not contained in his deposition testimony. This addition is more than supplementation – it "tells the same story differently." Thus, it must be struck. *S.W.S. Erectors*, 72 F.3d at 496.

2. Page 17, Fourth Paragraph: "Again, there is no indication that Prostaff took any action to protect its employees from the misconduct of Norris." This statement implies that Pro Staff had any knowledge of any improprieties committed by FMC employee Norris. Yet, apart from the improper statement contained in Grice's declaration, there is no such evidence.

3. Page 18, First Paragraph: "Again, however, Prostaff failed to take any action." Again, the implication is that Plaintiff Pierre complained to Pro Staff about this behavior. Yet as he conceded in his deposition, he never did voice any complaints about these incidents. Pro Staff Appendix at Exhibit "H" at 205-06, 212.

D. **Legal Analysis – Racially Offensive Graffiti & Symbols**

1. Page 18, Third Paragraph: "The graffiti was so open and notorious that Prostaff had imputed knowledge. ... For example, the same bathrooms that were littered with graffiti are also used by managers, who could see it." Plaintiff carefully omits who testified to these statements, but it is Plaintiff Pierre. Plaintiffs' Index at Exhibit P at 249-50, 255. Further, Pierre was responding to questions asked by his own attorney. And Pierre's testimony was not that Pro

6

Staff had constructive knowledge of this graffiti but that FMC did, because it was FMC managers who used these bathrooms. *See id.* at 249-50 ("Q: Do FMC managers use the bathroom near the cafeteria? A: Yes, they do").

2. Page 18, Third Paragraph: "Similarly, Prostaff managers use the same parking lot where the Confederate Flags were displayed." Again, the implication is that Pro Staff managers saw these flags. The testimony in question does not establish this; in fact, just the opposite. Plaintiffs' attorney – who was questioning Pierre – carefully distinguished between FMC and Pro Staff. He asked Pierre if FMC managers used this parking lot, but in contrast, also asked him if Pro Staff personnel used it. *See id.* at 250. Pierre asked affirmatively each time. *Id.* In any event, this testimony does not establish that Pro Staff managers saw any Confederate flags.

**E.     Legal Analysis – Assignment Menial Work To African-Americans**

1. Page 19, First Paragraph: "John Lucas, like Galimore, was also consigned to menial duties at the beginning of employment with Prostaff." The implication is that Pro Staff was the entity that assigned him these duties. Yet it is clear from his deposition testimony that FMC assigned these duties to him because he complained to FMC employee James Faucett. Plaintiffs' Index at Exhibit K at 79. In fact, Faucett responded to his complaint by assigning him to Plaintiff Mayo. *Id.*

2. Page 19, Second Paragraph: "Prostaff had knowledge that FMC manager Jame[s] Faucett was assigning Plaintiffs Galimore and Lucas menial duties, and not allowing him to perform substantive work." Plaintiffs submit no evidence to support the claim that Lucas complained to Pro Staff or put it on notice that he was performing "menial" work. There is none.

**F.     Legal Analysis – Racial Segregation**

1. Page 19: "Michelle Risinger received complaints of racial segregation 'years

7

ago.' ... This time Risinger did not investigate his allegation, or followup in any way. Racial segregation is specifically listed as an unlawful act under 42 USCS 2000e-2(a)(2)." The implication is that Pro Staff is liable for this behavior, yet Risinger is an FMC employee, not a Pro Staff employee. *See* Plaintiffs' Index at Exhibit GG at Exhibit A at 3. There are also no cites to evidence that these concerns were reported to Pro Staff.

### G. Legal Analysis – Defendant Was On Actual and Constructive Notice

1. Page 20, Third Paragraph: "Here, Prostaff knew about the misconduct of Stanley Norris and it knew about the nooses, graffiti and Confederate flags." There were no evidentiary cites following this sentence, but as pointed out above, there is no evidence that Pro Staff knew about racial comments made by Stanley Norris, graffiti, or Confederate flags.

2. Page 20, Third Paragraph: "Indeed, Prostaff personnel were responsible for the nooses." That is a blatant misrepresentation of the facts. The only evidence provided by Plaintiffs in regards to this contention – and none in connection with this sentence – is that a Pro Staff employee witnessed the September 2007 noose once it was already on FMCTI's property. There is absolutely no evidence that any Pro Staff employee placed any of the nooses at FMCTI's facility.

### H. Legal Analysis – Adverse Employment Actions

1. Pages 24-25, Last Paragraph/First Paragraph: "As described above, Plaintiffs Sykes, Lucas, and Pierre were denied training, denied full-time positions and assigned menial tasks." Plaintiffs' implication is that Pro Staff denied these opportunities to Plaintiffs. Yet in their depositions, these three plaintiffs expressly testified that Pro Staff did not engage in any of this behavior or otherwise retaliate against them. Pro Staff Appendix at Exhibit "I" at 255-56, Exhibit "E" at 271-73, and Exhibit "H" at 230, 234-35, 241-42.

8

2. Page 25, First Paragraph: "Parejo complained about being denied a welder's position and as a result, was never invited to join the apprenticeship program."[5] Again, Plaintiffs' implication is that Pro Staff denied this opportunity to Plaintiff Parejo. Yet, the evidence is uncontroverted that FMC ran the welding apprenticeship program, and handled the invitations to it, not Pro Staff. Plaintiffs' Index at Exhibit R at 38.

I. **Legal Analysis – Pro Staff Was The Joint Employer**

1. Page 27, First Full Paragraph: "Prostaff and FMC jointly provide training to employees." The implication is that Pro Staff helps train FMCTI employees or Pro Staff continues to train its former employees who have posted in to direct employment with FMCTI, which could not be farther from the truth. *See* Pro Staff Appendix at Exhibit "A" at ¶¶ 7, 20. Once a Pro Staff talent becomes a direct employee of FMCTI, Pro Staff ceases to play any role in connection with that individual's employment. *Id.*

J. **Legal Analysis – Plaintiffs Properly Exhausted Administrative Complaints**

1. Page 29, First Paragraph: "The Intake Questionnaire alleges, *inter alia,* the exposure to hangman's nooses, as well as denial of training and promotion, clearly putting Prostaff on notice of his hostile work environment claim." Plaintiffs did not cite to any evidence in support of this statement. And in fact, they cannot do this. The uncontroverted evidence is that Pro Staff was not afforded notice of his charge of discrimination in which FMCTI, and not Pro Staff, was listed as the respondent. *See* Pro Staff Appendix at Exhibit "A" at ¶ 19.

2. Page 29, Third Paragraph: "Finally, as Prostaff participated in the investigations into the Plaintiff's EEOC charges, it can not be heard to complain that it lacked notice or an opportunity to address the issues." In support of this statement, Plaintiffs cite to several pieces of testimony from former Pro Staff employee Paige Fuller's deposition. However, that testimony

---

[5] This allegation is repeated on Page 26, First Paragraph.

9

only establishes that she assisted FMCTI investigate Plaintiff Pierre and Plaintiff Galimore's charges, not Plaintiff Parejo's. Plaintiffs' Index at Exhibit F at 92. More importantly, there is no evidence to suggest that Pro Staff had notice from these two plaintiffs that they were upset with Pro Staff. By their own admissions, their charges were limited to FMCTI – FMCTI was the respondent and Pro Staff was not mentioned in the charges. Pro Staff Appendix at Exhibit "A" at ¶ 19. So, there were no issues to address, much less rectify.

## III.
## CONCLUSION

For these reasons, Defendant Pro Staff respectfully requests this Court sustain its objections and strike the above-referenced portions of Plaintiffs' Opposition to its Motion for Summary Judgment.

                Respectfully submitted,

                MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

                By:    /s/ W. Jackson Wisdom
                      W. Jackson Wisdom
                      State Bar No. 21804025
                808 Travis Street, Suite 1800
                Houston, Texas 77002
                Tel: (713) 632-1700
                Fax: (713) 222-0101

                ATTORNEYS FOR DEFENDANT,
                ATTORNEY-IN-CHARGE FOR DEFENDANT,
                DOBBS TEMPORARY SERVICES, INC. D/B/A
                PRO STAFF PERSONNEL SERVICES

OF COUNSEL:
James M. Cleary, Jr.
State Bar No. 00783838
Federal I.D. No. 15499
Diana Pérez
State Bar No. 24041674
Federal I.D. No. 13945

MARTIN, DISIERE & JEFFERSON, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Tel: (713) 632-1700
Fax: (713) 222-0101

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of Defendant Pro Staff's Objections to Plaintiffs' Summary Judgment Opposition Evidence has been forwarded by electronic mail via CM/ECF on July 23, 2010 to:

Ms. Angela Alioto
Mr. Steven L. Robinson
Mr. Joshua D. Boxer
LAW OFFICES OF MAYOR JOSEPH L. ALIOTO & ANGELA ALITO
700 Montgomery Street
San Francisco, California 94111
*Attorneys for Plaintiffs*

Mr. Kerry E. Notestine
Ms. Kelley Edwards
Ms. Sarah Stoffregen
LITTLER MENDELSON
1301 McKinney Street, Suite 1900
Houston, TX 77010
*Attorneys for Defendant FMC Technologies, Inc.*

/s/ James M. Cleary, Jr.
James M. Cleary, Jr.