IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BORIS BRYANT, DARREN MAYO, EDWARD PIERRE, LAWRENCE GRICE, KEVIN MCINTYRE, MAURICE GALIMORE, JAMES BROWN, CARLOS BEATTY, MARCUS PAREJO, LAMAR NEWTON, JOHN LUCAS, CARLTON SYKES, | § § § § § § § § | |
| Plaintiffs | § § | NO. 04:08-CV-03744 |
| vs. | § § | |
| FMC TECHNOLOGIES, INC., PROSTAFF PERSONNEL ACQUISITION CORP., | § § § § | |
| Defendants. | § § | |

<u>DEFENDANT FMC TECHNOLOGIES, INC.'S MOTION FOR SEPARATE TRIALS</u>

The defendant FMC Technologies, Inc. (FMCTI) files this Motion for Separate Trials under Federal Rule of Civil Procedure 42(b), and respectfully requests that this Court sever the claims of each plaintiff into separate trials.

**I.
<u>INTRODUCTION</u>**

This is a race discrimination, harassment, and retaliation case brought by Plaintiffs Boris Bryant, Darren Mayo, Edward Pierre, Lawrence Grice, Kevin McIntyre, Maurice Galimore, James Brown, Carlos Beatty, Marcus Parejo, Lamar Newton, John Lucas, and Carlton Sykes under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981, and Section 21.051 of the Texas Labor Code. Although the plaintiffs have brought their claims together in one lawsuit, they each allege independent claims against FMCTI arising from distinct factual scenarios and occurrences. As shown in this

Motion, allowing each of these claims to be tried together would cause great confusion to the jury and would pose substantial prejudice to FMCTI.

FMCTI filed a Motion for Summary Judgment on June 1, 2010 on each of the plaintiffs' numerous claims. Subject to this Motion for Summary Judgment, for the reasons outlined in this brief, FMCTI now moves the Court to order separate trials of each plaintiff's claims against the defendants.

## II.
## ARGUMENTS AND AUTHORITY

The plaintiffs' cases against FMCTI should be tried separately because any possible benefits to be derived from a common trial are more than offset by the confusion to the jury and prejudice to the defendant from proceeding with the cases jointly. Rule 42(b) of the Federal Rules of Civil Procedure provides:

> The court, in furtherance of convenience <u>or to avoid prejudice</u>, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of a trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b) (emphasis added).

To determine whether to order separate trials, the Court should consider: (1) whether separate trials would be in furtherance of convenience; (2) whether separate trials would avoid prejudice; (3) whether separate trials would be conducive to expedition and economy; (4) whether separate trials would simplify the issues for the jury and reduce the danger of unnecessary jury confusion; and (5) whether the issues are clearly separable. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). FMCTI satisfies all of these factors. In particular, because the claims are clearly separable, and because

separate trials would avoid confusion to the jury and prejudice to FMCTI, separate trials of any claims remaining after summary judgment is appropriate.

### A. The Court Should Sever Each Plaintiff's Case Into A Separate Trial.

#### 1. The plaintiffs' claims are clearly separable.

In their 50-page Complaint, the plaintiffs presents numerous factual allegations and several distinct legal claims against FMCTI. Each of the plaintiff's allegations are set forth separately, and each plaintiff presents a different set of claims to support his independent causes of action against FMCTI. For example, Plaintiff Bryant asserts 26 paragraphs of factual allegations in which he complains he was subjected to specific racial slurs, denied particular promotion opportunities, suffered distinct adverse employment-related actions, and that he observed certain allegedly racial symbols in the workplace. Plaintiff Grice asserts another 21 paragraphs of his own claims of alleged discrimination and harassment, premised on entirely different factual allegations. Indeed, each of the twelve plaintiffs in this case present their own, unique sets of facts to support their independent claims of discrimination, harassment, and retaliation.

The single factual allegation that unites the plaintiffs is that alleged nooses were found at FMCTI's facility. But even this shared allegation is insufficient to justify a joint trial of all of the issues in this case because the evidence demonstrates that each plaintiff was affected by the alleged nooses in different ways. Eight of the plaintiffs admit they never personally saw any noose, and each of these plaintiffs learned about the nooses in different ways.[1] The remaining four plaintiffs each observed one noose at different times

---

[1] *See* Bryant at 209; Mayo at 174, 182; Grice at 179, 196; McIntyre at 106 (admitting he learned about the noose only because of the company's response to the incident); Brown at 159; Beatty at 193, 205, 208, 211, 217; Parejo at 178; Lucas at 188. The plaintiffs' depositions are attached as exhibits to FMCTI's Motion

3

and in a different manner.[2] Further, each of the plaintiffs has testified to his own, individual reaction to the presence of the nooses.[3] In short, although the plaintiffs each allege that a hostile work environment existed in the high bay area of FMCTI's facility, the evidence demonstrates that each plaintiff observed different aspects of this alleged environment and that each plaintiff was affected by the alleged behavior in a different manner. In this way, each plaintiff's case is distinct from the others.

Thus, even though the plaintiffs each cite to some of the same events in support of their independent hostile work environment claims, it is clear that their respective claims are individualized, involving specific questions about each plaintiff's work environment and his personal reaction to the alleged incidents. *See Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) (ordering plaintiffs' discrimination claims to be severed). As such, the plaintiffs' claims are clearly separable from one another.

### 2. Separate trials would help avoid prejudice

If all of the plaintiffs' claims are tried together, FMCTI's right to a fair trial would be compromised, if not eliminated altogether. For example, permitting all of the plaintiffs' cases to be tried as one would allow the jury to hear the factual details of one plaintiff's claim while assessing the merits of another. In this way, there is a "tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims." *Grayson v. K-Mart Corp.*, 849 F.Supp. 785, 790 (N.D. Ga. 1994)

---

for Summary Judgment (Document # 44).
[2] *See* Complaint at ¶ 65 (Pierre); Galimore at 182 (saw the noose only after it was removed and placed in a plastic bag); Newton at 115-16, 118 (saw the noose outside his work area); Sykes at 85 (saw a part of the noose after noticing a lot of activity in the area and then quickly walked away).
[3] *See*, *e.g.*, Bryant at 253-254; Grice at 183; Lucas at 189. These pages are attached as exhibits to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

4

(severing claims of eleven age discrimination plaintiffs in part because of this risk). It is each plaintiff's responsibility to prove liability by FMCTI with respect to the adverse action(s) FMCTI allegedly took towards him individually. *Id*. "It is precisely this need to focus the jury's attention on the merits of each individual plaintiff's case that counsels against proceeding with these cases in one consolidated trial." *Id*.

Each plaintiff's allegations against FMCTI, while rooted in the same legal cause of action, arise from entirely different facts of varying degree. The litigation of the plaintiffs' allegations, therefore, necessarily requires twelve separate trials involving the business decisions related to each plaintiff's allegations of disparate treatment and the economic conditions involved in each such instance. For example, Plaintiff Mayo alleges that FMCTI denied him promotion opportunities because his supervisor, James Faucett, gave him negative performance reviews (Complaint at ¶ 46). Plaintiff Grice also claims he was denied promotions, but that it was at the hands of supervisor Eric Huering (Complaint at ¶ 77). And Plaintiff Galimore alleges that his supervisor, Brett Mohn, denied him training opportunities that impacted his ability to be promoted (Complaint at ¶ 109). Thus, while each plaintiff makes similar allegations of discrimination against FMCTI, the factual details of each plaintiff's case varies significantly from the others.

Furthermore, presenting all of the plaintiffs' cases at once poses a substantial risk that the jury will be so overwhelmed by the sheer volume of claims that they will be prejudiced against FMCTI from the outset of the trial. The plaintiffs have identified, in addition to themselves, over sixty potential witnesses in this action. A large number of these witnesses presumably have knowledge only of certain plaintiff's claims. Allowing a single trial of all of the plaintiff's claims, in which a great number of these witnesses

would be expected to testify, would involve weeks and weeks of testimony regarding FMCTI's alleged conduct. "Under these circumstances, there is a great danger that the jury will find [FMCTI] liable based on the sheer number of witnesses testifying about its purported wrongdoing." *Henderson*, 918 F. Supp. at 1063.

Moreover, it is likely that some of the evidence relevant to and admissible in one plaintiff's case against FMCTI will not be relevant to or admissible in another plaintiff's case. *See*, *e.g.*, *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1221 (5th Cir. 1995) (excluding the anecdotal testimony of other witnesses with different supervisors in different parts of company because it was too attenuated to be relevant). Without separate trials, the Court will be effectively precluded from using Rule 403 to prevent the irrelevant, unfairly prejudicial testimony which may be appropriate to one plaintiff's claim from spilling over into the others. *See* FED. R. EVID. 403; *Moorhouse v. The Boeing Co.*, 501 F.Supp. 390, 393 (E.D. Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980); *Mooney*, 54 F.3d at 1221. At the very least, the Court would be forced to admit evidence it would otherwise exclude and instruct the jury that the evidence can be considered only in support of a particular plaintiff's claim. But because a joint trial would make it extremely difficult for the jury to keep each plaintiff's claims separate, it is likely that "the jury [would] simply resolve the confusion by considering all the testimony to pertain to all the claims, despite any limiting instructions." *Henderson*, 918 F. Supp. at 1064. *See also Moorhouse*, 501 F. Supp. at 393 n.4 ("even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that the defendant laid him off because of his age."). In this way, a joint trial of all of the plaintiffs' claims poses a substantial risk of prejudice against FMCTI.

### 3. Separate trials would simplify the issues for the jury and help reduce confusion.

As explained above, this case involves a number of separate factual allegations against FMCTI. Each of the plaintiffs in this action raises claims of discrimination, harassment, and retaliation against the defendants, totaling over 100 distinct and separate causes of action. Further, each cause of action is supported by numerous independent factual allegations and claims of adverse actions based on race by each plaintiff. The plaintiffs have estimated that it will take at least <u>eight weeks</u> to fully try all of the allegations in this case. Trying all of these claims together in one action "would be extraordinarily confusing for the jury, requiring the jury to keep separate more than [100] claims of [twelve] plaintiffs" and would "present the jury with the 'hopeless task of trying to discern who did and said what to whom and for what reason.'" *Henderson*, 918 F. Supp. at 1063 (quoting *Moorhouse*, 501 F. Supp. at 392, and ordering severance where a mere twenty claims and five plaintiffs were involved).

If the claims of all twelve plaintiffs were tried together, the jury would be faced with over eight weeks of testimony, as well as pages and pages of detailed jury instructions with numerous questions on liability and damages. There is a substantial risk that, following the close of the evidence, each plaintiff's particular claims will be so intertwined with the claims of the others that the jury will be substantially confused about the merits of a particular plaintiff's claims. In contrast, separating the plaintiffs' cases for purposes of trial would allow the jury to focus on each individual plaintiff's allegations against the company and appropriately assess liability as to those individual claims. Allowing this separation would also better permit counsel to evaluate the strengths and weaknesses of each individual's case standing alone, which could increase the chances of

7

the parties resolving particular cases or claims prior to trial.

In short, permitting the clearly separable cases of each plaintiff to proceed to trial individually would greatly mitigate against the high risk of prejudice to FMCTI and confusion to the jury. The Court, therefore, should order separate trials for any plaintiff who manages to survive summary judgment.

### B. In The Alternative, The Court Should Order Separate Trials For Certain Plaintiffs

Even if this Court finds that separate trials of each plaintiff's case is not appropriate under the current circumstances, the Court should, at the very least, order separate trials for certain plaintiffs whose claims are significantly distinct from the others.

#### 1. Plaintiff Darren Mayo

Plaintiff Mayo alleges that FMCTI retaliated against him for filing this lawsuit by terminating his employment (Complaint at ¶ 59). As FMCTI has fully briefed in its Motion for Summary Judgment, FMCTI terminated Mayo after discovering that Mayo had received, stored, and distributed a large volume of inappropriate racist and pornographic material on his company-issued computer account. *See* Motion at 48-49. In response, Mayo alleges that numerous other FMCTI employees had received and forwarded similarly inappropriate emails and that they were not fired. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 47. The investigation into Mayo's behavior involved at least 21 individuals, all of which were subjected to a similar investigation. The company terminated, suspended, or otherwise reprimanded many of these individuals depending on the employee's conduct related to receiving, storing, or distributing inappropriate material, if any, on the employee's company computer account.

The material at issue involves a large amount of sexually explicit and, in some

8

cases, racially-charged picture files, videos, slide shows and other electronic media. For example, one video found on Mayo's account displays a large group of individuals engaged in sexual intercourse with one another. Another file consists of a PowerPoint presentation showing women masturbating with household objects and kitchen appliances. And numerous files include pornographic pictures of nude women. In order to fully try the issue of Mayo's termination, most, if not all, of this material would need to be admitted into evidence, and the comparative details regarding the numerous other individuals' behavior would also be placed at issue. The admission of such a large volume of evidence of this nature at trial would greatly distract the jury from the equally significant allegations and defenses relevant to the other plaintiffs. Further, some jurors would be offended at viewing the type of material that would be the subject of this evidence.

No other plaintiff in this action was terminated for storing and distributing inappropriate material. Because of the volume of electronic data at issue and the number of individuals implicated in the investigation into Mayo's inappropriate activity, the trial of this issue alone could take days and days and be highly distracting to the jury. For this reason alone, Mayo's case should be tried separately from the other plaintiffs.

### 2. Plaintiff John Lucas

FMCTI terminated Plaintiff Lucas's employment after the Company discovered numerous discrepancies between his time records and FMCTI's official badge scans indicating the times he entered and left company facilities. *See* Motion at 49-50. Lucas now contends that his termination was retaliatory. FMCTI, however, has produced evidence that it conducted a thorough investigation of Lucas's time discrepancies and that

it terminated three other individuals for similar clock violations. *See id.* No other plaintiff was a subject of this or any other similar investigation into alleged time clock violations.

The trial of Lucas's termination claim is, therefore, entirely distinct from any claim brought by any other plaintiff in this lawsuit. At the trial of Lucas's case, should his retaliation claim proceed to that point, FMCTI will have no choice but to present detailed evidence regarding Lucas's time discrepancies and the investigation into the report that he had stolen time from the company. The litigation of this issue will require a number of witnesses to testify as to this discrete issue and, if tried in conjunction with other plaintiffs' claims, would be very distracting from the jury. Because Lucas's allegations are wholly distinct from any other plaintiff in this matter, his case should be tried separately.

### 3. Plaintiff Marcus Parejo

Unlike the other plaintiffs in this lawsuit, Marcus Parejo is not African American, but instead is of East Indian ancestry. He claims he is from the country Trinidad & Tobago and asserts a claim of national origin discrimination against FMCTI. *See* Complaint at ¶¶ 143-44.

Like the other plaintiffs, Parejo bases his hostile work environment claim in part on the alleged nooses found at FMCTI's facility. *See id.* at ¶ 157. Unlike the other plaintiffs, however, Parejo admits that the nooses do not have the historical significance in his home country that they do in the United States. Parejo at 271. Every plaintiff must demonstrate that he personally perceived the allegedly offensive behavior to be hostile and abusive towards him or members of his ethnic group in particular. *See*, *e.g.*, *Jeffrey*

*v. Dallas County Med. Examiner*, 37 F.Supp. 2d 525, 531 (N.D. Tex. 1999). Even if Parejo found the noose to be offensive, it likely did not arouse the same emotions in him that the noose does for the other plaintiffs, who are African Americans from the United States. *See*, *e.g.*, *Porter v. Erie Foods Intl.*, No. 08-1996, 2009 U.S. App. LEXIS 17843 (7th Cir. Jan. 7, 2009)[4] (noting that those who view the noose as a mere symbol may not appreciate the significance of the noose).

Even the plaintiffs admit that individuals of African decent who are not from America but are instead from the Caribbean Islands,[5] for example, "do not have the same emotional attachment to racism and slavery, et cetera, [as African Americans from the United States] do." *See* Grice at 235, attached as Exhibit A. Trying Parejo's case along with the eleven other U.S.-born African Americans would prejudice the jury by leading them to associate the feelings the other plaintiffs have towards the noose incidents with those Parejo has personally experienced. In addition, it may lead the jury to confuse the allegations of race discrimination asserted by the other plaintiffs by the claim of national origin discrimination Parejo brings.[6] For these reasons, Parejo's case should be separately tried.

### 4. Plaintiffs Carlos Beatty, James Brown, Kevin McIntyre, and Lawrence Grice

Plaintiffs Beatty, Brown, McIntyre, and Grice worked in the Subsea Drilling Systems (SDS) department of FMCTI's facility during the relevant time period. *See*, *e.g.*, McIntyre, attached as Exhibit B, at 42. The SDS department is a smaller group that is

---

[4] Attached to FMCTI's Motion for Summary Judgment as Exhibit U.

[5] Trinidad & Tobago is an island nation that is the southernmost country in the Caribbean.

[6] In addition, Parejo brings a number of factual claims that are entirely dissimilar than the rest of the plaintiff's allegations. For example, Parejo alleges he was denied welding experience and a welding position at FMCTI. *See* Complaint at ¶¶ 145-148.

11

physically separated from the high bay and low bay areas. *Id*. Each of the SDS employees allege that they were subjected to a hostile work environment because one particular coworker of theirs – Stanley Norris – made a few, isolated racial comments in their presence, although the company later terminated his employment based on one of these comments. *See*, *e.g.*, Complaint at ¶¶ 79, 101, 130, 135.

In contrast, the other plaintiffs who complain of alleged racial slurs – Bryant, Mayo – complain instead about discrete comments made primarily from High Bay supervisor James Faucett. *See*, *e.g.*, Complaint at ¶¶ 16-17, 43, 103, 176. Other plaintiffs complain of certain, isolated acts by other High Bay employees. *See*, *e.g.*, Complaint at ¶¶ 104, 165. These remaining eight plaintiffs do not make any allegations related to Stanley Norris's alleged comments in the workplace.

Simply put, SDS employees Beatty, Brown, McIntyre, and Grice bring allegations that primarily concern their working environments in the SDS department, while the remaining employees make factual assertions regarding their working environments in the High Bay or other areas of the FMCTI facility. Because the claims of Beatty, Brown, McIntyre, and Grice distinctly concern certain employees in the SDS department, they are factually dissimilar from the remaining plaintiffs' allegations, and it is appropriate to try their cases separately.

### III.
### CONCLUSION

The claims brought by the twelve plaintiffs in this lawsuit arise from distinctly different factual backgrounds, and the details of each plaintiff's case are unique from one another. To try all twelve cases together would cause great confusion for the jury and great prejudice to FMCTI. For this reason, each plaintiff's case should be tried in a

separate trial.  In the alternative, however, certain individual plaintiffs should be required to try their cases separately, and the remaining plaintiffs should be divided into two groups based upon the department in which they worked.

WHEREFORE, Defendant FMC Technologies, Inc., respectfully requests that this Court grant its Motion for Separate Trials.

Dated:  July 26, 2010                                                          Respectfully submitted,

Of Counsel:

Kelley Edwards
State Bar No. 24041775
Federal ID No.  560755
Sarah Stoffregen
State Bar No. 24066151
Federal ID No. 966164
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

and

Lynn A. Kappelman
SEYFARTH SHAW LLP
Two Seaport Lane
Suite 300
Boston, MA 02210
617.946.4888 (Telephone)
617.790.5360 (Telecopier)
*Admitted pro hac vice*

*/s/  Kerry E Notestine (by permission KRE)*
Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal ID No. 2423
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

ATTORNEYS FOR THE DEFENDANT
FMC TECHNOLOGIES, INC.

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Joshua D. Boxer, counsel for Plaintiffs, via electronic mail on July 23 and 26, 2010, regarding the content of this motion, and Mr. Boxer stated that he is opposed to the relief sought in Defendant's Motion for Separate Trials.

> */s/ Kelley Edwards*
> Kelley Edwards

## CERTIFICATE OF SERVICE

I certify that I sent a copy of this document to the following on this 26th day of July, 2010, by the Southern District of Texas's electronic filing system.

Joshua D. Boxer
Steven L. Robinson
LAW OFFICES OF MAYOR JOSEPH L.
ALIOTO & ANGELA ALIOTO
jboxer@aliotolawoffices.com
srobinson@aliotolawoffices.com

James M. Cleary, Jr.
W. Jackson Wisdom
MARTIN, DISIERE JEFFERSON & WISDOM, L.L.P.
cleary@mdjwlaw.com
wisdom@mdjwlaw.com

> */s/ Kelley Edwards*
> Kelley Edwards

Firmwide:96146784.1 042176.1117