UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BORIS BRYANT, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-08-3744 |
| | § | |
| FMC TECHNOLOGIES INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.    INTRODUCTION

Pending before the Court are the defendants', Dobbs Temporary Services d/b/a Pro Staff Personnel Acquisition Corp. ("Pro Staff") and FMC Technologies, Inc. ("FMC"), motions for summary judgment (Docket Entry Nos. 41, 44, respectively).  The plaintiffs, Boris Bryant, Darren Mayo, Edward Pierre, Lawrence Grice, Kevin McIntyre, Maurice Galimore, James Brown, Carlos Beatty, Marcus Parejo, Lamar Newton, John Lucas and Carlton Sykes, have filed responses in opposition to both motions (Docket Entry Nos. 60, 56, respectively).[1]  Pro Staff objected to portions of the plaintiffs' opposition evidence (Docket Entry No. 65), and Lucas and Mayo object (Docket Entry Nos. 58, 59, respectively) to certain of FMC's exhibits in support of its motion for summary judgment.  After having carefully evaluated the motions, the record, the undisputed facts and the applicable law, the Court determines that both Pro Staff and FMC's motions for summary judgment should be GRANTED in part and DENIED in part.

---

[1] Bryant, Mayo, Grice and Newton asserted claims only against FMC and have thus filed a response only in opposition to FMC's motion.

## II.    FACTUAL BACKGROUND

The plaintiffs are eleven African-Americans and one West Indian individual.  At all relevant times, the plaintiffs worked at FMC's facilities, either as Pro Staff employees or as FMC employees.  Pro Staff is a temporary staffing agency that provides staffing services to FMC and other clients.  Pro Staff maintains a branch office on the site of one of FMC's facilities, pursuant to a contract between Pro Staff and FMC.[2]

All twelve plaintiffs have asserted claims against FMC for Title VII race discrimination, retaliation and hostile work environment; 42 U.S.C. § 1981 race discrimination and retaliation; and TEXAS LABOR CODE § 21.051 race discrimination.  Eight of the plaintiffs – those originally hired by Pro Staff to work at FMC's facility – have asserted some or all of those claims against Pro Staff.[3]  Additionally, Parejo, the West Indian individual, has asserted Title VII claims against both Pro Staff and FMC for national origin discrimination.

The parties agree that, at least at certain times, all twelve plaintiffs reported directly to FMC managers and leads; received day-to-day orders from FMC personnel; received performance evaluations from FMC personnel; had their hours, vacations and schedules set by FMC personnel; reported to FMC human resources managers; and were subject to FMC personnel's disciplinary decisions.   The parties also agree that most of the plaintiffs[4] were initially hired by Pro Staff and assigned to work at FMC.

Further, the parties stipulate that multiple alleged nooses were found on FMC's premises, and that Pro Staff and FMC jointly investigated at least one of those alleged nooses.  The parties

---

[2] In their Services Agreement, Pro Staff agreed to maintain an office and staff onsite at one of FMC's facilities, from June 1, 2007 through May 31, 2010, provided that FMC guaranteed Pro Staff a minimum of $250,000 in staffing needs per month.  *See*, Docket Entry No. 61, App. to Resp. in Opp. to Pro Staff's Mot. for Summ. J., Ex. A-1, Services Agreement between Pro Staff and FMC.

[3]  Pierre, McIntyre, Galimore, Brown, Beatty, Parejo, Sykes and Lucas asserted claims of 42 U.S.C. § 1981 race discrimination and retaliation against Pro Staff.  Pierre, Galimore and Parejo also asserted TEXAS LABOR CODE § 21.052 race discrimination and Title VII retaliation and hostile work environment claims against Pro Staff.

[4]  Bryant, Pierre, Grice, McIntyre, Galimore, Brown, Beatty, Parejo, Lucas and Sykes.

do not dispute that certain plaintiffs reported racist on-the-job commentary and graffiti to FMC personnel, both in writing and in person.

## III.    CONTENTIONS OF THE PARTIES

### A.    The Defendants' Contentions

#### 1.    Pro Staff's Contentions

Pro Staff argues for summary judgment against the eight Pro Staff plaintiffs because those plaintiffs did not establish *prima facie* cases of discrimination or retaliation; because Galimore and Parejo failed to exhaust administrative remedies; and because Pierre, Galimore and Parejo did not establish *prima facie* cases of a hostile work environment.  Pro Staff contends that FMC – not Pro Staff – employed the eight Pro Staff plaintiffs during any time period relevant to the present dispute.  Thus, Pro Staff contends it is entitled to summary judgment on all of those plaintiffs' claims.

#### 2.    FMC's Contentions

FMC argues for summary judgment against all twelve plaintiffs because the plaintiffs did not establish *prima facie* cases of discrimination or retaliation.  FMC avers that the plaintiffs' hostile work environment claims are insufficient as a matter of law because the noose incidents do not in-and-of-themselves establish a hostile work environment, because some of the alleged harassment of the plaintiffs was not based on race or national origin, because other alleged treatment of the plaintiffs did not affect the terms/conditions/privileges of their employment, and because FMC took prompt remedial measures towards any known discriminatory or harassing acts.  FMC also claims that the plaintiffs' discrimination allegations fail as a matter of law because some of the plaintiffs' allegations are not actionable adverse employment actions, because the plaintiffs failed to identify similarly situated employees, because the plaintiffs'

"failure to hire/promote/train" claims fail, and because the plaintiffs cannot establish pretext. Finally, FMC claims that the plaintiffs cannot establish that retaliation occurred.

### B.    The Plaintiffs' Contentions

#### 1.    Title VII Race Discrimination, Retaliation and Hostile Work Environment

All twelve plaintiffs assert Title VII race discrimination and retaliation claims against FMC.  Pierre, Galimore and Parejo also assert these claims against Pro Staff.

#### 2.    42 U.S.C. § 1981 Race Discrimination and Retaliation

All twelve plaintiffs assert 42 U.S.C. § 1981 race discrimination and retaliation claims against FMC.  Pierre, McIntyre, Galimore, Brown, Beatty, Parejo, Lucas and Sykes also assert these claims against Pro Staff.

#### 3.    TEXAS LABOR CODE §§ 21.051-.052 Race Discrimination

All twelve plaintiffs assert TEXAS LABOR CODE § 21.051 race discrimination claims against FMC.  Pierre, Galimore and Parejo also assert TEXAS LABOR CODE § 21.052 race discrimination claims against Pro Staff.

#### 4.    Title VII National Origin Discrimination

Parejo asserts Title VII national origin discrimination claims against both FMC and Pro Staff.

## IV.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and

identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine

issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).  Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).  Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.  ANALYSIS & DISCUSSION

### A.  Relationship between Pro Staff and FMC

The first issue before the Court is whether Pro Staff and/or FMC can be held liable as the plaintiffs' joint employers.  The plaintiffs' claims arose while they were employed by FMC.  Pro Staff alleges that it was an independent contractor and that FMC was the plaintiffs' employer during all times relevant to this dispute.  However, under the joint employer doctrine, a purported independent contractor can be held liable along with a purported employer for Title VII claims if the two entities are sufficiently interrelated. *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999) ("[S]uperficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer.")

The Fifth Circuit has determined that "[t]he term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983); *see also, Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir. 1997) (citing *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973)).  In light of this liberal construal, the Fifth Circuit "[draws] upon theories and rules developed in the related area of labor relations in determining when separate business entities are sufficiently interrelated for an employee whose Title VII rights have been violated to file a charge against both entities." *Trevino*, 701 F.2d at 403.

To determine whether two entities are joint employers, the Fifth Circuit endorses the hybrid economic realities/common law control test.  *See, e.g., Deal v. State Farm Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118-19 (5th Cir. 1993) (citing *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985)).  This test analyzes four factors when considering a possible joint employer relationship: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Trevino* at 404; *see also, Skidmore*, 188 F.3d at 616-17.   The right to control is the most important of the four factors.  *Deal*, 5 F.3d at 119 (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991)).   In *Trevino*, the court reversed a grant of summary judgment noting that, "[w]hile it would be premature on the basis of the record before us to decide that [the defendants] constitute a single employer for the purposes of this action, the facts do not clearly indicate that [the plaintiff] cannot under any discernible circumstance prove single employer status."  *Trevino* at 404-05 (citing *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 690 (5th Cir. 1980)).

Here, Pro Staff and FMC are sufficiently interrelated for a reasonable trier of fact to deem them joint employers.  The first factor – the interrelation of operations – weighs in favor of the plaintiffs.  Pro Staff and FMC's operations could be deemed sufficiently interrelated.  Pro Staff has maintained a branch office at one of FMC's facilities since at least 2001.  (Docket Entry No. 61, App. to Resp. in Opp. to Pro Staff's Mot. for Summ. J., Ex. A, Aff. of Elizabeth Cashiola, ¶ 1).  Ms. Cashiola, a member of Pro Staff's managerial staff, states:

> [d]uring the relevant time period … [FMC] would send a requisition to Pro Staff; in response Pro Staff would forward to [FMC] the names of potential "talent" or temporary personnel for hiring.  [FMC] would also forward resumes of individuals directly to Pro Staff for hiring.  [FMC] would also refer walk-in applicants to Pro Staff's on-site office . . . Pro Staff would pay the talent, withhold income and social security taxes from the talent's pay, provide workers' compensation insurance to the talent, and counsel, discipline and terminate the talent, but [FMC] would direct the talent's work.

(*Id.* at ¶ 5). While Pro Staff relinquished substantially all of its supervisory responsibilities over its employees when and if FMC hired them as full-time employees, Pro Staff stationed most of its eight plaintiffs only at FMC.  (*Id.* at ¶ 8).

Moreover, several plaintiffs claim they applied to Pro Staff for the express purpose of working at FMC.[5]  The course of dealings between Pro Staff, FMC and the plaintiffs supports the plaintiffs' well-founded expectation that employment at Pro Staff was a mandatory precursor to employment at FMC.  Pro Staff here attempts to wash its hands of all responsibilities owed to its "talent" hires once they were subsequently hired by FMC.  However, but for Pro Staff's initial hiring of "talent" employees, FMC would not have subsequently hired them.

Additionally, while still Pro Staff employees, FMC personnel supervised those eight plaintiffs, and they received FMC job-related training.  (*See, e.g., id.*, Ex. B, Dep. of Carlos

---

[5] *See, e.g.,* Brown's Dep. (Docket Entry No. 61, Ex. C, pp. 65, 75); Beatty's Dep. (*Id.*, Ex. B, p. 60); Lucas' Dep. (*Id.*, Ex. E, pp. 73, 76).

Beatty, pp. 68-71.)  Further, the sheer volume of interaction between Pro Staff and FMC could lead a trier of fact to find them sufficiently interrelated.  Pro Staff and FMC's contract specified that Pro Staff was required to keep an office on FMC's facility only if FMC "maintain[ed] a volume of $250,000 in temporary staffing per month billed by Pro Staff."  (*Id*., Ex. A-1, Services Agreement between Pro Staff and FMC).

In *Trevino*, the court determined that a joint employer relationship could exist when a staffing company supplied a business with 20-25% of that business's workforce.  *Trevino* at 399. While the record here does not provide a precise percentage of FMC's staffing supplied by Pro Staff, a reasonable factfinder could determine that a $250,000 minimum monthly contract shows sufficient connexity between the two defendants to discern a joint employer relationship.

The second factor – centralized control of labor relations – weighs neither for nor against either party.   While Pro Staff and FMC maintained separate staffs and hierarchies, they cooperated in a single business venture in the same physical location.

The third factor – common management – weighs in favor of the plaintiffs.  Pro Staff and FMC jointly investigated the October 2007 noose incident, and Pro Staff thereafter implemented monthly Respectful Workplace training for its employees stationed at the FMC facility.  (Docket Entry No. 61, Ex. A., *¶¶* 15, 17).

The fourth factor – common ownership or financial control – weighs in favor of the defendants.  Pro Staff and FMC are separately owned, and no evidence in the record indicates that either has any control over the other's finances.

On balance, a reasonable factfinder could decide that an analysis of these factors reveals Pro Staff and FMC as joint employers.  The plaintiffs have established that Pro Staff collaborated more closely with FMC than would a typical staffing agency.  Just as freshmen and seniors

attend the same high school, and just as junior varsity and varsity squads are ultimately part of the same team, so too is Pro Staff's branch office on FMC's facility sufficiently connected to FMC to be considered an extension of FMC's operations.  Therefore, the plaintiffs have alleged sufficient facts from which a reasonable trier of fact could discern a joint employer relationship.

### B.    The Defendants' Motions for Summary Judgment[6]

The second issue for determination is whether the plaintiffs have alleged sufficient facts to defeat Pro Staff and/or FMC's motions for summary judgment.  Because the Court is willing to consider the possibility that Pro Staff and FMC are joint employers, the Court will consider both defendants' motions for summary judgment together in this subsection, to the extent possible.

### 1.    Exhaustion of Administrative Remedies

The parties do not dispute that ten of the twelve plaintiffs appropriately exhausted administrative remedies by filing complaints with the Equal Employment Opportunity Commission ("EEOC").  The two remaining plaintiffs, Galimore and Parejo, both allege writing "Pro Staff" on their EEOC Intake Questionnaires.  The U.S. Supreme Court defers to the EEOC's regulations equating "Intake Questionnaires" to "charges."  *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 405 (2008).  "Having determined that the [EEOC] acted within its authority in formulating the rule that a filing is deemed a charge if the document can reasonably be construed to request agency action and appropriate relief on the employee's behalf, the question is whether the filing here meets this test.  The [EEOC] says it does, and we agree."  *Federal Express Corp.*, 552 U.S. at 405.  "Documents filed by an employee with the EEOC

---

[6] The Court will consider the plaintiffs' 42 U.S.C. § 1981 claims of discrimination and retaliation along with their Title VII claims for discrimination and retaliation.  Intentional discrimination, including racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981, is analyzed under one rubric.  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

should be construed, to the extent consistent with permissible rules of interpretation, to protect

the employee's rights and statutory remedies.  Construing ambiguities against the drafter may be

the more efficient rule to encourage precise expression in other contexts; here, however, the rule

would undermine the remedial scheme Congress adopted.  It would encourage individuals to

avoid filing errors by retaining counsel, increasing both the cost and likelihood of litigation." *Id.*

at 406.  For those reasons, this Court determines as a matter of law that all plaintiffs exhausted

their administrative remedies.

### 2.      Title VII Race and National Origin Discrimination

Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse
> to hire or to discharge any individual or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or privileges of
> employment, because of such individual's race, color, religion, sex, or national
> origin.

42 U.S.C. § 2000e-2(a)(1).  In employment discrimination cases such as the one *sub judice*, a

plaintiff can prove Title VII discrimination "through direct or circumstantial evidence." *Turner*

*v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*,

333 F.3d 572, 578 (5th Cir. 2003)).

The Fifth Circuit has held that in cases where the plaintiff produces no direct evidence[7] of

discriminatory intent, a court must evaluate proof of circumstantial evidence using the burden-

shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See, Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist*

---

[7] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or
presumption." *See, Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco
Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

*Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also, Turner*, 476 F.3d at 345 (citing

*Rutherford v. Harris County*, 197 F.3d 173, 179-80 (5th Cir. 1999)).

Under the *McDonnell Douglas* burden-shifting framework, the Fifth Circuit has restated

the test as follows:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment.  If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either:  (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (citations and internal quotation marks omitted); *see also, Turner*, 476

F.3d at 345 (internal citations omitted); *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th

Cir. 2005) (internal citations omitted).  "A plaintiff may establish pretext either through evidence

of disparate treatment or by showing that the employer's proffered explanation is false or

'unworthy of credence.'"  *Laxton*, 333 F.3d at 578 (quoting *Wallace*, 271 F.3d at 220; *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).  "Although intermediate

evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, '[t]he

ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff.'"  *Reeves*, 530 U.S. at 143 (citing *Tex.*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Thus, "a plaintiff can avoid summary judgment if the evidence, taken as a whole:  (1)

creates a fact issue as to whether each of the employer's stated reasons was not what actually

motivated the employer and (2) creates a reasonable inference that race was a determinative

factor in the actions of which plaintiff complains."  *Grimes v. Tex. Dep't of Mental Health and*

*Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996) (overruled on other grounds)).

### a.   The Plaintiffs' *Prima Facie* Case of Race Discrimination

Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a *prima facie* case of discrimination, which, in turn, creates a rebuttable presumption of unlawful discrimination by the employer. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (citing *Burdine*, 450 U.S. at 255). To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must demonstrate that: "(1) he belongs to a protected group, (2) he was qualified for his position, (3) he suffered an adverse employment action; and (4) he was replaced with a similarly qualified person who was not a member of his protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)); *see also, Septimus*, 399 F.3d at 609.

First, the parties do not dispute that all twelve plaintiffs belong to protected minority groups. Second, the parties do not dispute that all the plaintiffs were qualified for the positions for which they were hired. Third, Bryant, Mayo, Pierre, Grice, Galimore, Parejo, Newton, Lucas and Sykes have provided evidence of adverse employment actions (considered *infra*). Fourth, those nine plaintiffs alleged *prima facie* cases of disparate treatment and averred that similarly situated employees were treated differently.

Based on a review of the depositions submitted to the Court, the Court determines that Pierre, Galimore, Parejo, Lucas and Sykes have alleged sufficient facts to establish a *prima facie*

case of discrimination against both Pro Staff and FMC because they allege having been denied promotions and/or necessary job training offered to similarly situated non-minority employees. The Court also determines that Bryant, Mayo, Grice and Newton have alleged similar facts against FMC, thereby establishing *prima facie* cases of discrimination.   On the other hand, McIntyre, Brown and Beatty have not alleged sufficient facts to establish a *prima facie* case of Title VII race discrimination against either Pro Staff or FMC.

>   **b.**    **The Defendants' Legitimate, Nondiscriminatory Reasons for Adverse Employment Actions**

For those nine plaintiffs who have established *prima facie* cases of discrimination, the burden now shifts to the defendants to articulate legitimate, non-discriminatory reasons for their adverse employment actions.  The defendants' burden at this stage "is one of production, not persuasion . . . [and] can involve no credibility assessment."  *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (internal quotations omitted) (citing *Reeves*, 530 U.S. at 142).  To this end, the defendants "need only articulate a lawful reason, regardless of what its persuasiveness may or may not be."  *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).

Pro Staff's primary contention here is that at all times relevant to this dispute, Pierre, Galimore, Parejo, Lucas and Sykes were FMC employees, not Pro Staff employees.  However, based on the joint employer doctrine, considered *supra*, this Court finds Pro Staff's defense inadequate.  In light of the joint employer doctrine, Pro Staff has offered no substantive reason for the adverse employment actions alleged by those five plaintiffs.  Thus, Pierre, Galimore, Parejo, Lucas and Sykes' charges against Pro Staff survive summary judgment scrutiny.

FMC offers various reasons why each plaintiff's discrimination claims should fail. However, Bryant, Mayo, Pierre, Grice, Galimore, Parejo, Newton, Lucas and Sykes dispute FMC's supposedly nondiscriminatory reasons for what those nine plaintiffs deem discriminatory

adverse employment actions.  Thus, this Court determines that issues of fact remain regarding whether FMC committed adverse employment actions against Bryant, Mayo, Pierre, Grice, Galimore, Parejo, Newton, Lucas and Sykes, particularly when considered in light of the parties' potential hostile work environment (*see*, Section V.B.4, *infra*).  Therefore, this Court finds that FMC has not produced sufficient nondiscriminatory reasons to counter those nine plaintiffs' *prima facie* discrimination claims.

### c.      The Plaintiffs' Proffered Evidence of Pretext for Race Discrimination

"[T]o rebut a defendant's showing of legitimate, nondiscriminatory reasons for its actions, '[i]t is not enough . . . to *dis* believe the employer.'"  *Warren v. City of Tupelo Mississippi*, No. 08-60916, 2009 WL 1560022, * 4 (5th Cir. June 3, 2009) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original)).  Rather, "the factfinder must *believe* the plaintiff's explanation of intentional discrimination."  *Id.* (emphasis in original).  "The Supreme Court clarified in *Reeves* that, to meet this burden, 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'"  *Levias v. Texas Dep't of Criminal Justice*, 352 F. Supp.2d 751, 769 (S.D. Tex. 2004) (quoting *Reeves*, 530 U.S. at 148).

"This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability."  *Reeves*, 530 U.S. at 148 (emphasis in original).  "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred." *Id.* (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1291-92 (D.C. Cir. 1998) (*en banc*)).

Because the Court finds that neither defendant offered sufficient legitimate, nondiscriminatory reasons for their decisions not to train or promote Bryant, Mayo, Pierre, Grice, Galimore, Parejo, Newton, Lucas and Sykes in a manner equivalent to similarly situated non-minority employees, those allegations are allowed to proceed to trial.  Therefore, summary judgment is GRANTED for both defendants with respect to McIntyre, Beatty and Brown's claims of Title VII race discrimination.  Summary judgment is DENIED with respect to all other Title VII race discrimination claims.

Parejo's Title VII national origin discrimination claim is subject to the same analysis as the Title VII race discrimination proffered *supra*, and so summary judgment, for both defendants, is DENIED on that claim.

### 3.        Title VII Retaliation

To establish a *prima facie* case of retaliation, "a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.* 320 F.3d 570, 575 (5th Cir. 2003)).

First, the plaintiffs here allege that they were engaged in protected Title VII employment activity when they complained and/or filed formal charges of employment discrimination in violation of Title VII.  Second, the plaintiffs allege that the defendants retaliated against them by subjecting them to discriminatory employment treatment in the forms of being denied promotions, being denied requisite on-the-job guidance and being treated differently than

similarly situated employees.   Third, the plaintiffs allege that they experienced adverse employment actions *because* they complained and/or filed formal charges of discrimination in violation of Title VII.

For purposes of retaliation, an adverse employment action need not amount to an "ultimate" employment decision such as hiring, firing, or demotion, but extends to any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).  However, this Court finds that no plaintiff has shown that he suffered adverse employment actions *as a result* of filing formal charges against the defendants.  While some of the plaintiffs sufficiently allege charges of Title VII discrimination (*see*, Section V.B.2.*, supra*), no plaintiff showed that any discrimination occurred specifically because he complained of discrimination or filed EEOC charges against the defendants.

The Fifth Circuit "has repeatedly held that 'stray remarks' do not demonstrate [discrimination].   In order for [a discriminatory] comment to be probative of an employers discriminatory intent, it must be direct and unambiguous."  *EEOC v. Tex. Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996) (internal citations omitted) (with respect to age discrimination).  In the present case, the plaintiffs' allegations of racist comments and graffiti in the workplace, even if true, do not amount to legally actionable adverse employment actions under a Title VII retaliation analysis.  While those alleged remarks and graffiti may be in poor taste, and while those alleged remarks and graffiti are relevant to a Title VII hostile work environment analysis (*see,* Section II.B.4., *infra*), they do not establish a Title VII retaliation cause of action.

Accordingly, summary judgment is GRANTED for both defendants on all plaintiffs' Title VII retaliation claims.

####     4.     **Title VII Hostile Work Environment**

To establish a *prima facie* case of Title VII hostile work environment, an employee must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on the employee's membership in the protected group; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *See*, *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001).

First, the plaintiffs here belong to protected minority groups.  Second, they allege being subjected to unwelcome harassment in the form of nooses, racial slurs/graffiti and disparate treatment.  Third, they allege that this harassment was based on their membership in protected groups.  Fourth, they allege that this harassment affected their employment in that they were denied promotions and training, that they felt discriminated against, and that this discrimination affected their ability to do their jobs.  Fifth, they allege that the defendants had actual or constructive knowledge of the harassment but failed to take sufficient remedial action.

Certain plaintiffs complained to FMC's human resources department, making FMC aware of allegedly discriminatory action.   As for Pro Staff's knowledge of potential discrimination, certain of Pro Staff's employees exclusively attended to serving FMC's staffing needs from the Pro Staff office located within FMC's facility.  Based on Pro Staff and FMC's degree of interrelation, Pro Staff could have had at least constructive knowledge of employment discrimination on FMC's premises.   When harassment is pervasive, courts may impute constructive notice to an employer.  *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir. 1998).  A defendant "may also be liable if it had *constructive* knowledge, *i.e.*, if through the exercise of reasonable care [an employer] should have known what was going on but failed to

address it.  Whether an employer may be charged with constructive knowledge is, within certain legal constraints, a question of fact."  *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999) (emphasis in original).

An employer violates Title VII when the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris*, 510 U.S. at 21 (quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  The Fifth Circuit and other courts have long recognized that racially degrading comments and actions can create or contribute to a hostile work environment even when they are not specifically directed at an individual plaintiff.  *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989); *see also*, *Hawkins v. Anheuser-Busch*, 517 F.3d 321 (6th Cir. 2008).

"[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  *Oncale v. Sundower Offshore Servs.*, 523 U.S. 75, 81 (1998), (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).  Under the "totality of the circumstances" test, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment, but whether – taken together – the reported incidents make out such a case."  *Jackson v. Quanex Corporation*.  191 F.3d 647, 659 (6th Cir. 1999).  Further, to survive summary judgment, the harassment need only be "severe *or* pervasive."  *Harville v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434-35 (5th Cir. 2005) (bolding omitted; italics in original).

In the present case, even if not all of the plaintiffs were subject to severe racial harassment, they each allege being subjected to some level of racial harassment in an environment of pervasive racial discrimination.  It is for the trier of fact to separate the wheat

from the chaff, and thus to determine whether any of the plaintiffs' claims, considered in light of the totality of the circumstances, are actionable.  Considering the totality of the circumstances as alleged by the plaintiffs, a reasonable trier of fact could determine that racist sentiments and actions pervaded the plaintiffs' workplace, thereby creating a hostile work environment.

Accordingly, construing all inferences in the plaintiffs' favor at the summary judgment stage of these proceedings, the plaintiffs should be allowed to progress to trial.  Thus, this Court DENIES the defendants' motions for summary judgment with respect to all plaintiffs' Title VII hostile work environment claims.

### 5.    TEXAS LABOR CODE §§ 21.051-.052 Race   Discrimination

The Texas Labor Code ("THRCA") states, in pertinent part:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEXAS LABOR CODE §§ 21.051.  The following provision deals with employment agencies in particular, stating that the agency acts unlawfully if it:

> (1) fails or refuses to refer for employment or discriminates in any other manner against an individual because of race, color, disability, religion, sex, national origin,                       or                       age; or (2) classifies or refers an individual for employment on the basis of race, color, disability, religion, sex, national origin, or age.

TEXAS LABOR CODE § 21.052.

The THRCA is modeled after Title VII.  *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex. App.–El Paso, 1997, writ denied).  Accordingly, courts are encouraged to look to federal cases to help interpret it.  *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492

(Tex. 1996).  Thus, courts also analyze TCHRA claims under the same framework as Title VII claims.  *Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812, 823 (S.D. Tex. 2009). Accordingly, the Court's Title VII analysis, (*see*, Section V.B.2., *supra*), applies to the plaintiffs' supplemental state law claims.  Therefore, summary judgment is GRANTED for both defendants with respect to McIntyre, Beatty and Brown's claims of THRCA race discrimination.  Summary judgment is DENIED with respect to all other THCRA race discrimination claims.

### 6.      The Defendants' Claims of Remediation

The defendants have provided insufficient proof of remediation at the summary judgment phase of the proceeding.  The elements of the remediation defense are:

> (a) [T]hat the employer exercised reasonable care to prevent and correct promptly any [racially] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any corrective opportunities provided by the employer or to avoid harm otherwise.

*Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (overruled on other grounds) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *and Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).  Because the parties reasonably disagree about whether FMC and Pro Staff's remediation efforts were sufficient, the issue should be presented to a trier of fact.  What constitutes prompt remedial action "depends on the facts of the case."  *Skidmore* at 615.  Further, "[t]he moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial."  *Cooper v. Wal-Mart Transportation, LLC.*, 662 F. Supp. 2d 757, 772 (S.D. Tex. 2009) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  Therefore, the defendants are not entitled to summary judgment on any claim as a result of a remediation defense.

VI.     **CONCLUSION**

Based on the foregoing analysis and discussion, the defendants' motions for summary judgment are hereby GRANTED in part and DENIED in part.  Specifically, summary judgment is GRANTED for the defendants on McIntyre, Brown and Beatty's claims of Title VII and THRCA race discrimination, and on all plaintiffs' retaliation claims.  Summary judgment is DENIED on all other Title VII and THRCA race discrimination claims, on Parejo's Title VII national origin discrimination claim, and on all plaintiffs' Title VII hostile work environment claims.

It is so **ORDERED**.

SIGNED at Houston, Texas this 16th day of September, 2010.

Kenneth M. Hoyt
United States District Judge