IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BORIS BRYANT, DARREN MAYO, EDWARD PIERRE, LAWRENCE GRICE, KEVIN MCINTYRE, MAURICE GALIMORE, JAMES BROWN, CARLOS BEATTY, MARCUS PAREJO, LAMAR NEWTON, JOHN LUCAS, CARLTON SYKES, | §§§§§§§ | |
| Plaintiffs | §§ | NO. 04:08-CV-03744 |
| vs. | §§ | |
| FMC TECHNOLOGIES, INC., PROSTAFF PERSONNEL ACQUISITION CORP. , | §§§§ | |
| Defendants. | §§ | |

DEFENDANT FMC TECHNOLOGIES, INC.'S
MOTIONS IN LIMINE

The defendant, FMC Technologies, Inc. (FMCTI), before the voir dire examination of the jury panel, before the opening statements by counsel, and before the introduction of any evidence, respectfully files its Motions in Limine.

FMCTI moves the Court to instruct Plaintiffs Boris Bryant, Darren Mayo, Edward Pierre, Lawrence Grice, Kevin McIntyre, Maurice Galimore, James Brown, Carlos Beatty, Marcus Parejo, Lamar Newton, John Lucas, Carlton Sykes, their counsel and the witnesses called by them, to make no reference or to suggest in any way in voir dire examination or otherwise throughout the trial of this case in the presence of the Jury any or all of the following items without first having approached the Bench out of hearing of the Jury and without having first secured the Court's permission:

**A.     Evidence of Other Alleged Harassment the Plaintiffs Did Not Personally Experience or Witness**

   1. <u>Alleged Discrimination or Harassment the Plaintiff Did Not Personally Experience</u>.

This lawsuit involves each plaintiff's individual claim of workplace harassment based on his race.  To maintain a claim for a hostile work environment, each plaintiff must establish: (1) he is a member of a protected class; (2) he suffered unwelcome harassment; (3) the harassment was based on his race; (4) the harassment affected his job; and (5) the employer was responsible. *Johnson v. TCB Construction Co. Inc.*, No. 08-60472, 2009 U.S. App. LEXIS 13617, at *10-11 (5th Cir. June 23, 2009); *see also Cavalier v. Clearlake Rehab. Hosp. Inc.*, 306 Fed. Appx. 104, 106 (5th Cir. Jan. 7, 2009) (stating fifth element as "knew or should have known about the harassment but failed to take prompt remedial action"); *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (same); *Hockman v. Westward Communs. LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004) (same).

   Accordingly, any alleged discrimination, harassment, or unfair treatment directed at individuals that the plaintiffs themselves did not experience or witness is not probative of the issues in this case; namely, whether each plaintiff <u>himself</u> was subjected to a hostile work environment based on his race.  Fed. R. Evid. 401; *Arrieta v. Yellow Transportation*, C.A. No. 3:05-cv-2271-D, 2008 U.S. Dist. LEXIS 101502, at *81, *92 n.41, 42 (N.D. Tex. Dec. 12, 2008) ("to establish a hostile work environment claim, however, a plaintiff must personally experience racial harassment"); *see also Johnson v. TCB Contruction Co. Inc.*, No. 08-60472, 2009 U.S. App. LEXIS 13617, at *10-12 (5th Cir. June 23, 2009) ("although [the plaintiff] offers evidence of [the supervisor's] frequent use of the term 'n-----," these comments were not uttered in [the plaintiff's] presence nor is there evidence that they affected his job.  [The plaintiff] has therefore failed to offer enough evidence that he suffered from a racially hostile work environment under

Title VII"); *Septimus*, 399 F.3d at 612 ("all of [the plaintiff's] other summary judgment evidence on this [hostile work environment] claim pertained to other women in the OGC, not [the plaintiff], and therefore is not relevant"); *Celestine v. Petroleos de Venezuela*, No. 03-30706, 108 Fed. Appx. 180, 187-188 (5th Cir. 2004) (affirming district court's denial of Rule 60(b)(6) motion on plaintiff's hostile work environment claim while noting that plaintiff's "other claims are based on hearsay; things that other employees told him, or things that he heard about that happened before he started working at the plant") (emphasis in original); *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 303-04 (5th Cir. 2000) (finding when plaintiff attempted to prove a "pattern or practice" or discrimination in disparate treatment case, a "parade of anecdotal witnesses, each recounting his own, entirely unrelated contention of age discrimination at the hands of the defendant, substantially prejudiced [the defendant].  This evidence should have been excluded, and we hold that the district court abused its discretion in not doing so."); *Dogan-Carr v. Saks Fifth Ave.*, H-05-1236, 2007 U.S. Dist. LEXIS 12977, at *90-91 (S.D. Tex. Feb. 26, 2007) (noting that "second-hand harassment" carries less evidentiary weight, and no fact issue existed on harassment claim because plaintiff himself never heard the supervisor make racially offensive comments); *see also Fullwiley v. Union Pacific Corp.*, 273 Fed. Appx. 710. 713 (10th Cir. April 4, 2008) ("some of [the plaintiff's] allegations concern alleged racial harassment of other employees of which [the plaintiff] himself was not aware.  Like the pre-November 21, 1991, evidence and the hearsay statements, these allegations are also not cognizable in a 42 U.S.C. § 1981 action"); *Smith v. NE Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004) ("There is no hostile work environment where as here, the harassment about which [the plaintiff] complains was not directed at her" and when "what [the plaintiff] personally experienced does not amount to an objectively hostile work environment"); *Honor v. Booz-Allen & Hamilton*, 383 F.3d 180,

190 (4th Cir. 2004) (nothing that in a racial harassment case, "we focus on [the plaintiff's] personal experiences").

Furthermore, the dangers of unfair prejudice, confusion of the issues, and the likelihood to mislead the jury substantially outweigh the probative value, if any, of this evidence.  Fed. R. Evid. 403.  Indeed, such anecdotal tales from other current or former employees would be introduced solely for the purpose of attempting to inflame the jury, and would also needlessly waste time and risk jury confusion.  For every piece of evidence presented by the plaintiffs regarding the alleged harassment that they did not experience or witness, FMCTI will be forced to respond with evidence defending these unrelated allegations.  FMCTI's necessary responses would entail the presentation of even more witnesses who might have no involvement with the events about which the plaintiffs personally complain.  Thus, the Court should not allow this type of testimony pursuant to Rule 403.  Fed. R. Evid. 403.

The plaintiffs may also seek to introduce evidence of alleged conduct that they did not personally experience or witness in the hope that the jury will find FMCTI acted unfairly in other instances and, thus, must have acted unfairly toward them as well.  For example, many of the plaintiffs will seek to offer testimony about the nooses found at FMCTI's facility, even though they did not personally see any of the nooses.  Because the plaintiffs did not personally observe this conduct, however, this evidence should not be admitted.  Rule 404 of the Federal Rules of Evidence specifically precludes a party from introducing evidence of a person's character for the purpose of proving action in conformity therewith on a particular occasion.  Fed. R. Evid. 404.  Thus, third parties' evidence of other alleged wrongs or acts is not admissible to prove alleged wrongful conduct towards the plaintiffs based on their race.  Fed. R. Evid. 404(b).

In sum, FMCTI requests that the plaintiffs, their counsel, and their witnesses be

precluded from introducing evidence relating to any allegations of discriminatory or harassing conduct or unfair treatment at FMCTI that they did not personally experience or witness as irrelevant, speculative, not based on personal knowledge, unduly prejudicial, and improper character evidence. Fed. R. Evid. 401, 402, 403, 404.

      2.      <u>"Me Too" Evidence</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence relating to any allegations of disparate treatment, unequal treatment of employees, or retaliation from any other current or former employee, i.e. "me too" evidence.  This includes, but is not limited to, any references to other minorities carrying heavier work loads, being assigned undesirable tasks, receiving unequal break times, being subjected to drug tests or other tests, receiving disciplinary warnings, not being hired or promoted as quickly as others.  This also includes testimony from other current or former FMCTI employees who may offer testimony regarding the alleged discrimination or harassment that they experienced as an FMCTI employee.  For example, the plaintiffs list Freedom Nokomo as a potential witness in their lawsuit.  Nokomo is a former FMCTI employee who previously sued the company for race discrimination.[1]  Because testimony such as Nokomo's is irrelevant and prejudicial, the Court should exclude this "me too" evidence.

      First, many of these claims are irrelevant because the Court granted summary judgment regarding discrimination claims other than those related to promotions and training and all retaliation claims under Title VII, the TCHRA, and § 1981.  Accordingly, any such evidence should be excluded as irrelevant.  Fed. R. Evid. 402.  Second, such evidence should be excluded because FMCTI will be forced to respond to each of these claims relating to individuals who are not parties to this lawsuit.  The Fifth Circuit has cautioned against creating these "trials within a trial," holding that they substantially prejudice defendants.  *Wyvill v. United Cos. Life Ins. Co.,*

---

[1] FMCTI obtained summary judgment on all of Nokomo's claims.

212 F.3d 296, 303 (5th Cir. 2000) (to admit such evidence creates mini-trials, requiring a defendant to respond both to the instant claim, as well as other claims of discrimination); *see also Fields v. J.C. Penney Co., Inc.*, 968 F.2d 533, 537-38 (5th Cir. 1992). The evidence in these mini-trials would take a significant amount of the Court's time to wade through. Furthermore, any probative value of this evidence is substantially outweighed by the danger of unfair prejudice to FMCTI, the presentation of needless evidence, and the risk of confusing or misleading the jury. Therefore, it should be excluded. Fed. R. Evid. 403.

3.    <u>Unspecified Persons and Events</u>.    FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence relating to any non-specific references to people and events, which fail to identify the individual involved and/or fails to provide the time or circumstances surrounding these alleged events. For example, generalized references to "white employees," "minority employees," and "black employees" should be excluded. FMCTI expects the plaintiffs will offer vague allegations that fail to identify when the alleged events occurred. Non-specific allegations based on unsupported assertions should be excluded. *See* Fed. R. Civ. P. 56(e); *Fullwiley*, 273 Fed. Appx. at 713 (holding court should not consider vague, conclusory allegations regarding events of which the plaintiffs are unable to provide an approximate date).

For example, Bryant testified at his deposition about James Faucett using the "n" word to an unidentified individual on a date falling somewhere between 2001 and 2003. Not only is this statement time-barred conduct,[2] it is a non-specific allegation that lacks the requisite particularity of facts. *Id.* Wendell Deboskie testified at his deposition that an unnamed individual stated in a meeting that the noose discovered at the FMCTI facility was not a real noose. And many of the plaintiffs may offer testimony about other employees who wore confederate flag tattoos or other

---

[2] *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) (statute of limitations for § 1981 claim is four years).

allegedly offensive symbols, but they will not be able to identify the particular individuals. These statements, and others like them, should be excluded at trial. Fed. R. Civ. P. 56(e).

    4.    <u>Complaints By Other Employees</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence relating to any EEOC charges or other formal complaints of discrimination or harassment filed by any current or former employee other than the plaintiffs.  FMCTI anticipates the plaintiffs will attempt to rely on other individuals' allegations of discrimination and/or harassment, none of which concerns the plaintiffs' personal experiences or supports their individual claims in this case.  This anecdotal evidence of these individuals' allegations is irrelevant to the plaintiffs' claims.  *See Septimus*, 399 F.3d at 612; *Arrieta*, 2008 U.S. Dist. LEXIS 101502, at *81, *92 n.41, 42. Furthermore, these EEOC charges refer to non-specific, unsubstantiated, and conclusory allegations based on subjective belief and speculation.  Accordingly, the Court should exclude these EEOC charges as irrelevant to the plaintiffs and because the probative value, if any, is substantially outweighed by the risk of unfair prejudice.  Fed. R. Evid. 401, 402, 403.

**B.    Allegations Dismissed on Summary Judgment**

    1.    <u>Retaliation Claims</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence relating to any allegations of retaliation from the plaintiffs.  As the Court granted summary judgment on these claims, they are wholly irrelevant. Fed. R. Evid. 402.  And even if such evidence had some theoretical relevance to the plaintiffs' remaining claims, which it does not, its probative value, if any, is substantially outweighed by the danger or unfair prejudice to FMCTI, the presentation of needless evidence, and the risk of confusing or misleading the jury.  For these reasons, it should be excluded.  Fed. R. Evid. 403.  The following are examples of retaliation allegations brought by the plaintiffs that should be excluded:

- Darren Mayo's termination from FMCTI in September 2009.

- John Lucas's termination from FMCTI in February 2009.

- Sykes' denied promotion to Team Leader in March 2010, which Sykes claims occurred as a direct result of his complaint to FMCTI that a coworker was wearing a confederate flag belt buckle which Sykes found to be offensive.

- Grice's allegation that Dean Winkler told him that he would never be promoted because of his prior lawsuit.

- Any mention of Grice being labeled a "troublemaker" by HR Manager Michelle Risinger because of his previous complaints.

- Any mention of Grice being "blackballed" by James Faucett from receiving a Service Tech position because of Grice's previous complaints.

- Any mention of Lucas being told he would be "walked out the door" by James Faucett after he allegedly complained to Faucett about a coworker telling a chicken and watermelon joke.

- Any mention that Mayo was demoted or denied lead pay after complaining about nooses in the workplace.

- Any mention of Parejo's allegation that his supervisor Jon Troxell called him into his office, slammed the door, and yelled at him for "going over his head" to HR.

In particular, the termination claims of Lucas and Mayo should be excluded in their entirety in accordance with the Court's ruling on summary judgment. Not only did the Court expressly dismiss these claims, but the admission of evidence relating to these claims would greatly distract the jury from the equally significant allegations and defenses relevant to the other plaintiffs.

FMCTI terminated Plaintiff Lucas's employment after the Company discovered numerous discrepancies between his time records and FMCTI's official badge scans indicating the times he entered and left company facilities. If evidence regarding his termination is deemed admissible, FMCTI will have no choice but to present detailed evidence regarding Lucas's time

discrepancies and the investigation into the report that he had stolen time from the company. The litigation of this issue will require a number of witnesses to testify as to this discrete issue and, if tried in conjunction with other plaintiffs' claims, would be very distracting from the jury.

The admission of evidence related to Mayo's termination would result in an even greater distraction to the jury.  FMCTI terminated Mayo after discovering that Mayo had received, stored, and distributed a large volume of inappropriate racist and pornographic material on his company-issued computer account.  The investigation into Mayo's behavior involved at least 21 individuals, all of which were subjected to a similar investigation.  The company terminated, suspended, or otherwise reprimanded many of these individuals depending on the employee's conduct related to receiving, storing, or distributing inappropriate material, if any, on the employee's company computer account.  The material at issue involves a large amount of sexually explicit and, in some cases, racially-charged picture files, videos, slide shows and other electronic media.  For example, one video found on Mayo's account displays a large group of individuals engaged in sexual intercourse with one another.   Another file consists of a PowerPoint presentation showing women masturbating with household objects and kitchen appliances.  And numerous files include pornographic pictures of nude women.  In order to fully try the issue of Mayo's termination, most, if not all, of this material would need to be admitted into evidence, and the comparative details regarding the numerous other individuals' behavior would also be placed at issue.  The admission of such a large volume of evidence of this nature at trial would greatly distract the jury from the equally significant allegations and defenses relevant to the other plaintiffs.  Further, some jurors would be offended at viewing the type of material that would be the subject of this evidence.  For all of these reasons, evidence related to Lucas's and Mayo's terminations should be excluded in their entirety.

2.      <u>Discrimination Claims By Certain Plaintiffs</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence relating to any allegations of discrimination from plaintiffs Beatty, Brown, and McIntyre.  As the Court granted summary judgment on these claims, they are wholly irrelevant.  Fed. R. Evid. 402.  And even if such evidence had some theoretical relevance to the plaintiffs' remaining claims, which it does not, its probative value, if any, is substantially outweighed by the danger or unfair prejudice to FMCTI, the presentation of needless evidence, and the risk of confusing or misleading the jury. For these reasons, it should be excluded.  Fed. R. Evid. 403.

3.      <u>Discrimination Claims Other Than Promotions or Training</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence relating to any allegations of discrimination from the plaintiffs other than their claims related to promotion decisions and training opportunities.   The Court's summary judgment opinion specified that only the plaintiffs' claims relating to promotions and training, for which the plaintiffs identified direct comparators, remain at issue for trial.   Accordingly, any other discrimination claims, including plaintiffs Lucas and Mayo's wrongful termination claims, were dismissed and are now wholly irrelevant.  Fed. R. Evid. 402.  And even if such evidence had some theoretical relevance to the plaintiffs' remaining claims, which it does not, its probative value, if any, is substantially outweighed by the danger or unfair prejudice to FMCTI, the presentation of needless evidence, and the risk of confusing or misleading the jury.  For these reasons, evidence related to these claims should be excluded.  Fed. R. Evid. 403.

**C.      Harassment Not Based on Race (African American)**

1.      <u>Non-Race Based Harassment</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be instructed and directed to make no reference to facts or allegations of a

hostile work environment or discrimination claim based on allegations not related to race or West Indian national origin.  This includes discrimination or harassment based on gender, weight, seniority, or any other characteristic other than race or West Indian national origin.  For example, Beatty testified at his deposition that co-worker Stanley Norris made a simulated sexual act towards another employee.  This evidence should be excluded.

A plaintiff cannot establish a racially hostile work environment claim without proof that race motivated the conduct.  *See*, *e.g.*, *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80-81 (1998); *Beaumont v. Tex. Dep't of Criminal Justice*, 468 F. Supp. 2d 907, 919-20 (E.D. Tex. 2006).  Evidence of unfair treatment based on any other characteristic has no tendency to prove that FMCTI discriminated against the plaintiffs because of their race.  Fed. R. Evid. 401, 403; *see also Kelly v. Boeing Petroleum Servs.*, 61 F.3d 350, 357-58, 360 (5th Cir. 1995) (holding unrelated acts of discrimination irrelevant).  Accordingly, any probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  Fed. R. Evid. 403.  Therefore, the Court should exclude any allegations of alleged harassment that fail to assert specific facts establishing a racial character or purpose existed.  Fed. R. Evid. 401, 402.

2.     Alleged Harassment Directed to Non-African Americans.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be instructed and directed to make no reference to facts or allegations of a hostile work environment or discrimination claim based on allegedly offensive statements made to non-African Americans.  For example, Grice testified at his deposition that Stephen Matula called Louis Brown names that may have been offensive to Native Americans, and Beatty testified that co-worker Stanley Norris called employee Danny Acevedo a "wetback."  These comments are unrelated to the plaitniffs' allegations that they were

discriminated against because they are African American.  Accordingly, any probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  Fed. R. Evid. 403.

**D.      Time-Barred Conduct**

1.      <u>Conduct Before December 26, 2004</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence of, or making reference to, time-barred conduct.  Specifically, this Court should exclude any evidence of conduct that occurred before December 26, 2004.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) (statute of limitations for § 1981 claim is four years).

For example, Mayo testified at his deposition about being denied a transfer to a service position in 2000.  He also alleges in his Complaint that he was denied a promotion to the surface department in 1999.  Mayo further alleges that he and another African American employee were accused in 2000 of stealing time, an incident he claims was discriminatory.  As these events occurred prior to December 26, 2004, they are time-barred and should be excluded.  *Id.*

2.      <u>Prior Allegations By Grice</u>.  FMCTI requests that plaintiff Grice and plaintiffs' counsel and their witnesses be precluded from introducing evidence of, or making reference to, allegations asserted in Grice's prior race discrimination lawsuit against FMCTI.  Judge Vanessa Gilmore rendered summary judgment for FMCTI on all claims made by Grice on May 24, 2006, and the Fifth Circuit affirmed this decision on the merits on January 30, 2007.  216 Fed.Appx. 401 (5th Cir. 2007).  Some of the evidence offered by Grice in support of his claims in this matter are the same evidence as Grice offered in his prior case.  FMCTI therefore moves that the Court exclude from in the trial of this matter any evidence offered by Grice in support of his discrimination and harassment claims that occurred prior to May 24, 2006.

12

**E.      Inadmissible Statements by FMCTI Employees**

1.      <u>Hearsay Statements</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence of, or making reference to, statements or testimony that constitute inadmissible hearsay.  Fed. R. Evid. 801, 802.  The following are examples of hearsay statements that should be excluded from evidence at trial:

- Bryant testified at his deposition that Roy Bolton once called him "boy" in 2004 or 2005.  Bolton was not employed in a management or supervisory position at the time.  Accordingly, the statement is hearsay and should be excluded.

- Grice testified at his deposition that he heard reports from fellow employees that co-worker James Faucett used the "n" word and made other racial statements.  Faucett was not employed in a managerial capacity at FMCTI, and Grice heard the statements from other non-managerial employees.  As such, these accounts constitute double hearsay and should not be admitted.[3]

- Several plaintiffs will attempt to testify that they heard accounts of nooses present at the workplace from fellow employees.  These statements are also hearsay, as they are admitted for the truth of the matter asserted.

- Mayo testified that a fellow employee made complaints with human resources about co-worker Stanly Norris calling him the "n" word.  As Mayo did not hear these complaints personally, and because the statement came from a fellow non-managerial employee, his account constitutes inadmissible hearsay.

- Mayo further testified that a co-worker overheard James Faucett call a Caucasian employee a "n--- lover."  Mayo did not hear the statement directly.  Accordingly, this statement is hearsay.

- Galimore testified that he heard that Roy Bolton once tied a noose in his office.  As Galimore did not personally observe this conduct, but heard about it from a fellow employee, it constitutes inadmissible hearsay.

- Mayo testified that another employee told him that Eric Heuring had tied a noose and placed it in Roy Bolton's office and that it was not the first time he had done so.  Mayo did not personally observe this conduct but heard about it from a fellow employee.  Accordingly, this statement is hearsay.

---

[3] In addition, these allegations should be excluded because Grice previously raised them in his prior lawsuit, in which all of his claims were dismissed on summary judgment.

- Mayo testified that he heard from a fellow employee in 2004 that a noose was found in the weld shop.  Mayo did not personally see this alleged noose, and he is not sure if the employee who told him about the incident actually saw the alleged noose.  As such, this account is hearsay and should be excluded.

- Beatty testified that fellow employees told him that it was difficult to get hired on full-time in his department as an African American.  As these statements were made by non-managerial employees, they are clearly hearsay and should be excluded.

- Pierre testified that he was told by his coworkers that James Faucett didn't like African Americans.  These statements were made to Pierre by non-managerial employees, offered for the truth of the matter asserted and therefore constitute inadmissible hearsay.

- Bryant testified that in 2004 or 2005 he heard from Ira Conley or Eric Smith that James Faucett had referred to Freedom Nkomo as a "black ass monkey."  As Bryant did not personally hear this alleged comment, but heard about it from a fellow employee, it constitutes inadmissible hearsay.  Lucas testified that in 2008 he heard his manager Tim Hanus make a comment about monkeys playing football.  Lucas asked his coworker Chris Ferguson what Hanus meant by the comment and Ferguson told him that it was an old racist joke about black people playing with footballs in the jungle and that Hanus had previously been sent to HR for using the "N" word years earlier.  These alleged comments by Ferguson constitute out-of-court statements, offered for the truth of the matter asserted and therefore should be excluded.

- Lucas testified that a human resources employee told him she had approved a training video and held her head down while making this admission.  This is an out of court statement offered for the truth of the matter asserted and, as such, is inadmissible hearsay.

- Newton testified at his deposition that James Bryan referred to the noose as "not that big of a deal."   As Bryan was not a supervisor or managerial employee, this statement is hearsay and should be excluded.

- Newton further testified that Brian Holden, a Caucasian employee, referred to him as "boy."  These statements are also hearsay and should not be admitted at trial.

- In his declaration attached to plaintiffs' summary judgment opposition, Sykes stated that he heard coworker Brian Holden refer to another African American employee as having "big black monkey hands."   As Holden was not a supervisor or managerial employee, this statement is hearsay and should be excluded.

- Wendell Deboskie may offer testimony that includes several comments from

14

individuals at FMC.  In many of these instances, he cannot remember who specifically made the comments.  As these assertions are vague statements based in hearsay, they should be excluded.

- Deboskie testified at his deposition that someone told him Susan Webb said she had assigned Deboskie to investigate the noose incident because of his race.  As this statement came from a third party, it constitutes inadmissible hearsay and should be excluded.

2.    <u>Stray Remarks</u>.    FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence of, or making reference to, statements or testimony that constitute stray remarks, as such statements cannot support the plaintiffs' claims. In order for comments to be "sufficient evidence of discrimination, they must be '(1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the employment decisions; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.'"  *Krystek v. Univ. of So. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996)). Otherwise, the comment is a stray remark, and cannot be supportive of discrimination.  *Id.*; a*lso see Fortier v. Ameritech Mobile Commc'n, Inc.*, 161 F.3d 1106, 1112 (7th Cir. 1998) (stating that a supervisor's comment about the need for a woman in a particular position is "not sufficiently related, either logically or temporally, to the termination decision and therefore is not probative of [the employer's] intent at that time").

The plaintiffs will attempt to offer evidence that constitute stray remarks and, for this reason, should not be admitted.  For example, Mayo testified at his deposition that he heard James Faucett call fellow employee Trenton Burkhalter the "n" word in 2002.  Not only is this conduct time barred,[4] the statement also represents a stray remark that should be excluded. Accordingly, the Court should exclude this and other, similar statements during the trial of this

---

[4] *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) (statute of limitations for § 1981 claim is four years).

matter.

       3.     <u>Statements Outside the Witness's Personal Knowledge</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence of, or making reference to, statements or testimony that are outside the witness's personal knowledge. Fed. R. Evid. 602.  The following are examples of statements that should be excluded from evidence at trial because they are outside the witness's personal knowledge:

- Mayo testified at his deposition that Roy Bolton had a no-call/no-show, yet he was not disciplined.  Mayo admitted that he was not Bolton's supervisor, but merely heard of the incident.  Accordingly, this statement was made outside Mayo's personal knowledge, and he should not be permitted to testify as to this alleged incident.

- Beatty further testified that co-worker Stanley Norris asked a fellow employee who "n---- rigged" a tool.  Brown admitted he did not personally hear the comment.  As such, in addition to being hearsay, the statement is outside Brown's personal knowledge and should be excluded.  Fed. R. Evid. 403.

- Brown testified about Norris telling fellow employee Danny Acevedo that he looked like a "jungle monkey," but admitted he was not physically present for the comment.  This comment, therefore, is outside Brown's personal knowledge and is inadmissible.

- Lucas may attempt to offer testimony regarding what other employees received in raises and that the Caucasian employees were generally happier with their raises and promotions than were the African American employees. These statements are hearsay, and Lucas has no personal knowledge of what the employees' raises actually were.  As such, this testimony should be excluded.

- The plaintiffs may offer testimony about nooses found at FMCTI's facility, even though the plaintiffs did not actually see the nooses themselves.  Such testimony about the nooses is outside these plaintiffs' personal knowledge and, therefore, is inadmissible.

**F.**    **Evidence of Conduct at Other FMCTI Facilities**

       1.     FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence regarding alleged racial incidents at any facility other than the one where the plaintiffs worked.  In particular, FMCTI requests that the Court exclude evidence of an

alleged noose incident at FMCTI's Hardy Road facility.  Any allegations regarding any facility other than Gears Road, where each of the plaintiffs worked during the relevant time period, do not involve individuals similarly situated to the plaintiffs.  *See Wyvill*, 212 F.3d at 302; *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1220-21 (5th Cir. 1995); *Jackson v. The Univ. of Tex. M.D. Anderson Cancer Ctr.*, 172 F. Supp. 2d 860, 878 (S.D. Tex. 2001).  Furthermore, allegations about this facility is irrelevant to whether the plaintiffs themselves have been subjected to a hostile work environment or discriminated against.  Fed. R. Evid. 401, 402.  Likewise, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, risk of confusion, and potential to mislead the jury.  Fed. R. Evid. 403.

**G.     Subjective Beliefs**

1.     <u>Subjective Beliefs Regarding Discrimination</u>.  FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence regarding the subjective beliefs of the plaintiffs, their coworkers, and/or their supervisors that they were discriminated against or harassed because of their race, no matter how genuine that belief, because such subjective beliefs are not probative.  *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 555 (5th Cir. 1997) (a plaintiff's "subjective interpretation of [her supervisor's] comments is insufficient"); *see also Septimus*, 399 F.3d at 610; *Martin v. Kroger*, 65 F. Supp. 2d 516, 553 (S.D. Tex. 1999) ("an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief . . . Moreover, the subjective belief of a fellow employee, whether a supervisor, coworker, or in this instance, a subcontractor, suffers from the same defects as the plaintiff's subjective belief").  In an employment discrimination case, neither an employee's subjective belief that he was harassed nor a coworker's subjective belief that harassment occurred is sufficient to establish harassment did in fact occur.

2.      <u>Subjective Beliefs Regarding Job Performance</u>.    FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing testimony regarding the plaintiffs' alleged job performances from individuals who had no supervisory authority over the plaintiffs during the relevant time period.  Fed .R. Evid. 401, 402, 403.  Such testimony is not only irrelevant insofar as these witnesses have no personal knowledge of the plaintiffs' job performances relative to the performances of other similarly situated employees, but it would also only serve to confuse and mislead the jury, which would substantially prejudice the defendant.  *See*, *e.g.*, *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 856 F.2d 1461, 1465 (5th Cir. 1989); *Linetsky v. Eurpac Serv., Inc.*, 1998 WL 792554, at *8 (N.D. Tex. Nov. 7, 1998).  Likewise, any testimony from the plaintiffs' peers at FMCTI regarding the plaintiffs' work performances is irrelevant insofar as these employees are not in a better position than FMCTI to evaluate the competency and qualifications of its employees, and is irrelevant to the ultimate issue of whether FMCTI discriminated against the plaintiffs.

**H.      Damages**

1.      <u>Punitive Damages</u>.    FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from attempting to introduce evidence of, make reference to, or provide an instruction or question regarding punitive damages.  The plaintiffs have no evidence that FMCTI acted with malice or reckless indifference to the plaintiffs' rights.  Any reference to punitive damages, therefore, is irrelevant and unfairly prejudicial, confusing, and misleading. Fed. R. Evid. 402, 403; *see also Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002) (affirming trial court decision refusing to instruct jury on punitive damages because employer made a good faith effort to prevent and punish sexual harassment, even though supervisor may have acted with malice); *Green v. The Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 653 (5th

Cir. 2002) (affirming trial court decision rejecting punitive damages where employer's antidiscrimination policy and practices demonstrated a good faith attempt to comply with Title VII); *Shoreline, Inc. v. Hisel*, 115 S.W.3d 21, 26 (Tex. App.—Corpus Christi, no pet.).

To recover punitive damages, the plaintiffs must show that FMCTI – rather than the individual decision-makers – acted "with malice or with reckless indifference to [their] federally protected rights." 42 U.S.C. § 1981a(b)(1). Applying this standard, FMCTI "may not be held vicariously liable" for punitive damages because the Company has an overall practice of making "good faith efforts to comply with" anti-discrimination laws. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 545 (1999); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 334-36 (vacating punitive damages award where evidence was insufficient to show malice or reckless indifference to the plaintiff's rights). Specifically, at all times relevant to the plaintiffs' claims, FMCTI maintained a strict and comprehensive policy against discrimination and harassment, which provides detailed examples of prohibited conduct and a procedure for reporting inappropriate conduct. FMCTI also maintains an Ethics Point Hotline, which encourages employees to report concerns about discrimination or harassment anonymously. These policies and procedures, standing alone, should preclude the plaintiffs from introducing any evidence at trial regarding their claims for punitive damages. *See Kolstad*, 527 U.S. at 544 (written non-discrimination policy instituted in good faith "goes a long way towards dispelling any claim about an employer's 'reckless' or 'malicious' state of mind.") (citation omitted).

Furthermore, the evidence will demonstrate that FMCTI provided training on discrimination and harassment to each new employee of its facility and also provided periodic training to managers and supervisors. FMCTI's training program is sufficient to preclude a punitive damages assessment, and this Court should exclude any evidence regarding the

plaintiffs' claim for punitive damages.  *See Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 477 (5th Cir. 2002).

Punitive damages are also inappropriate in the instant case because FMCTI strictly enforces its policies against discrimination.  As the evidence at trial will demonstrate, FMCTI terminated or otherwise appropriately disciplined individuals found to have violated its anti-discrimination and/or anti-harassment policies.  Given FMCTI's significant efforts to implement and enforce its anti-discrimination policies and procedures, the plaintiffs are not entitled to punitive damages, and the Court should issue an order precluding the plaintiffs from introducing or referring to evidence on the issue at trial.  *Kolstad*, 527 U.S. at 546 (employer can show good faith by making good-faith efforts to enforce its antidiscrimination policies); *Green v. The Admins. of the Tulane Educ. Fund*, 284 F.3d 642, 654 (5th Cir. 2002) (affirming trial court's denial of punitive damages where employer's enforcement of its antidiscrimination policy demonstrated its good faith).

In the alternative, this Court should bifurcate the punitive damages phase of this case in order to prevent undue prejudice to FMCTI.  Rule 42(b) of the Federal Rules of Civil Procedure provides, in relevant part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim … or of any separate issue.

Fed. R. Civ. P. 42(b).  It is well-settled that the separation of issues at trial is firmly within the discretion of the trial court.  *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir.) (holding that bifurcation is "a matter to be decided on a case-by-case basis [which] must be subject to an informed discretion by the trial judge in each instance."), *cert. denied*, 439 U.S. 955 (1978).  In determining whether bifurcation is appropriate, the trial court should consider

convenience, potential prejudice to the parties, and judicial economy. *See Emerick v. United States Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984).

In the instant case, the punitive damages phase of the trial should be tried separately because a charge on punitive damages during the liability portion of the trial would be unduly prejudicial to FMCTI. As this Court is aware, the punitive damages phase of this case may involve evidence regarding FMCTI's finances. Such evidence is utterly irrelevant to the liability phase of this case, and may create the unfair impression among jurors that FMCTI is a defendant with unlimited financial resources. This will cause prejudice to FMCTI because such evidence creates an unnecessary risk that the jury will award excessive compensatory damages to Plaintiff. *See Carter-Herman v. City of Philadephia*, No. 95-4030, 1996 U.S. Dist. LEXIS 19065, at *21 (E.D. Pa. Dec. 23, 1996) ("The scales of prejudice tipped in favor of bifurcating the punitive damage phase of this case. A charge on punitive damages during the primary trial could have prejudiced the City severely, tempting the jury to award excessive compensatory damages against a defendant with deep pockets."). As a result, even if this Court allows evidence of punitive damages at trial, it should bifurcate the trial on this issue.

2. <u>Damages Not Disclosed</u>. FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from attempting to introduce evidence of, make reference to, or provide an instruction or questions regarding damages or the computation of the same not disclosed by the plaintiffs to the defendants in response to discovery seeking identification of the same. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides, in part, "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

Fed. R. Civ. P. 37(c)(1).

**I.      Expert Witnesses**

1.      FMCTI moves this Court to strike the designation of the plaintiffs' expert witnesses, Craig Pratt and Dr. Kenneth Lehrer, because, as more fully set forth in Defendant's Motion in Limine to Preclude Expert Testimony, each is not qualified to give the opinions rendered, their opinions are unsupported by reliable facts or evidence, and the admission of their testimony will not assist the Court and the trier of fact but would only serve to confuse the jury and unduly prejudice the defendants.

**J.      Motions Related to the Actions of Plaintiffs' Counsel**

1.      <u>Information on Plaintiffs' Counsel's Website</u>.  FMCTI moves this Court for an order prohibiting the plaintiffs' counsel, Angela Alioto, or anyone else from her law office, from putting any information about this case on her website (http://www.aliotolawoffices.com) or mentioning the existence of this website to the jury at any point during the trial.  Based on past behavior of the plaintiffs' counsel, counsel for the defendants anticipates that the plaintiffs' counsel will post information about the case (including inadmissible evidence) on her firm's website, thereby potentially improperly influencing the jury.  Such activity by the plaintiffs' counsel should be precluded because it is not relevant to the lawsuit and is prejudicial to the defendants.  Fed. R. Evid. 403.

2.      <u>Introducing Family Members at Trial</u>.  FMCTI moves this Court for an order precluding the plaintiffs' counsel, Angela Alioto, from introducing any of her family members to the jury at any point during the trial, including but not limited to *voir dire* and opening.  The defendants' counsel is aware that the plaintiffs' counsel has introduced her family members to the jury in previous trials.  Defendants anticipate that the plaintiffs' counsel may again

intentionally draw attention to her family members, including her deceased father, former San Francisco mayor Joseph Alioto, in an attempt to curry favor with the jury. Such actions are not only irrelevant to all of the issues in this case, but also would be prejudicial to the defendants and would improperly evoke emotional bias. Fed. R. Evid. 403.

**K.     Miscellaneous**

1.     <u>Witnesses Not Called</u>. FMCTI requests that the plaintiffs, their counsel, and their witnesses be instructed not to suggest to the jury by testimony, argument, or otherwise what would have been the testimony of any witness not actually called to testify in this action. Fed. R. Evid. 401, 403, 801(c).

2.     <u>Policies and Practices As They Should Be</u>. FMCTI requests that the plaintiffs, their counsel, and their witnesses be precluded from introducing evidence of what FMCTI's policies and practices regarding the investigation of harassment complaints should be. The law does not require FMCTI to do more than what is reasonable under the circumstances. *See*, *e.g.*, *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478-79 (5th Cir. 2005). Moreover, statements regarding what FMCTI's policies or practices should be is unfairly prejudicial to FMCTI and is likely to confuse the issues and mislead the jury. Fed. R. Evid. 401, 402, 403. As such, this evidence should be excluded.

3.     <u>Witnesses or Exhibits Not Designated</u>. FMCTI requests that the plaintiffs be prohibited from calling witnesses or introducing exhibits that they did not timely designate on their Pretrial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(3).

4.     <u>Defense Firm References</u>. The plaintiffs should be precluded from mentioning or attempting to introduce evidence that the attorneys for FMCTI or the law firms of Littler Mendelson, P.C. and/or Seyfarth Shaw specialize in the defense of lawsuits involving

employment discrimination, including race discrimination and hostile work environment. FMCTI further submits that the plaintiffs should not refer to Littler Mendelson, P.C. or Seyfarth Shaw as a large law firm or referring to the number of attorneys employed by or associated with the firms of Littler Mendelson, P.C. or Seyfarth Shaw.  Fed. R. Evid. 401, 403.

FMCTI submits that each of the above matters is unfairly prejudicial and wholly irrelevant to this cause of action and to any issue that the Jury may ultimately consider in this cause.  To all the plaintiffs' counsel to inquire into these matters, or to allow any witness for the plaintiffs to mention these matters, would unduly prejudice the defense of this case.  Fed. R. Evid. 403.  Moreover, all of these matters cannot be adequately raised by trial objection without prejudice to the moving party, and the prejudice of mentioning the matters in the presence of the jury cannot be cured by an instruction from the Court.  FMCTI moves the Court to instruct the plaintiffs, their attorneys, and their witnesses to refrain from mentioning any of the above matters, without first having approached the Bench out of the hearing of the Jury and without first having secured the Court's permission.

Accordingly, FMCTI prays that this Court consider each of the grounds for this Motion in Limine set forth above and consider each of the requests contained in such Motion.  FMCTI respectfully prays that this Court enter such orders and issue such instructions as may be necessary in order to protect the trial of this case and to ensure that there will be no mistrial by reason of passion, prejudice, or otherwise.  Finally, FMCTI respectfully prays for an Order of this Court sustaining the same and for such other and further relief, general and special, legal and equitable, to which FMCTI may be justly entitled.

Respectfully submitted,

Of Counsel:

Kelley Edwards
State Bar No. 24041775
Federal ID No.  560755
Sarah Stoffregen
State Bar No. 24066151
Federal ID No. 966164
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

Lynn Kappelman (appearing *Pro Hac Vice*)
MA State Bar No. 642017
MA Federal ID No. 642017
SEYFARTH SHAW, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
617.946.4888 (Telephone)
617.790.5360 (Telecopier)

*/s/ Kerry E Notestine* (by permission KRE)
Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal ID No. 2423
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

ATTORNEYS FOR THE DEFENDANT
FMC TECHNOLOGIES, INC.

<u>CERTIFICATE OF SERVICE</u>

I certify that I sent a copy of this document to the following on this 27th day of September, 2010 via the Court's electronic filing system:

Joshua D. Boxer
Steven L. Robinson
LAW OFFICES OF MAYOR JOSEPH L.
ALIOTO & ANGELA ALIOTO
jboxer@aliotolawoffices.com
srobinson@aliotolawoffices.com

James M. Cleary, Jr.
W. Jackson Wisdom
MARTIN, DISIERE JEFFERSON & WISDOM, L.L.P.
cleary@mdjwlaw.com
wisdom@mdjwlaw.com

___*/s/ Kelley Edwards*_____
Kelley Edwards

Firmwide:97506639.2 042176.1117

26