UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

BORIS BRYANT, DARREN MAYO,    )   Case No.  04:08-CV-03744
EDWARD PIERRE, LAWRENCE GRICE, )
KEVIN MCINTYRE, MAURICE         )
GALIMORE, JAMES BROWN, CARLOS  )
BEATTY, MARCUS PAREJO, LAMAR   )
NEWTON, JOHN LUCAS, CARLTON    )
SYKES,                                )

         Plaintiffs,           )

                         )

     v.                       )

                         )

FMC TECHNOLOGIES, INC.,         )
PROSTAFF PERSONNEL            )
ACQUISITION CORP.,          )

         Defendants.        )

## PLAINTIFFS' OPPOSITION TO DEFENDANT FMC'S

## MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

1.     __INTRODUCTION__

    Defendant FMC moves for an in lime order excluding the testimony of Plaintiffs' expert witnesses, Craig Pratt on human resources matters and Dr. Kenneth Lehrer on the Plaintiffs' monetary losses.

    The Plaintiff opposes this motion.

In the succeeding pages, Plaintiffs will discuss the substance of Craig Pratt;s testimony, they will then respond to FMC's arguments that it will be excluded and, finally, they will respond to the argument that Dr. Lehrer's testimony should be excluded.

**2.    CRAIG PRATT'S REPORT**

Craig Pratt's opinion, as stated in his report;

"[P]inpoints four distinct areas in which HR personnel at FMC failed to follow HR management principles to the detriment of workers and company productivity in subsea Houston;

1.    Failure to mobilize senior management in an intensive campaign against racism in response to the September 2007 noose incident;

2.    Failure to engage third party' contractors in EEO compliance issues;

3.    Failure to investigate workplaee issues identified in two separate series of HR interviews with employees in April 2008 and May 2008; and

4.    Failure to assert leadership in addressing persistent workplace issues." Declaration of Steven L. Robinson in Opposition to Defendant FMC'S Motion in Limine to Exclude Expert Testimony, Exhibit A - Plaintiffs' Expert Witness Disclosure, Craig Pratt Report ("Pratt Report") P. IL 000048.

**Pratt's Opinion No. 1 - Failure to Mobilize Management**

In the first area, Pratt discussed actions taken by Human Resources Director Susan Webb in response to the discovery of a hang man's noose in the "subsea warehouse" worksite.  Webb assigned HR staffer Wendell Deboskie to investigate the incident, confidentially. However, Ms. Webb did not disclose the incident to senior HR management.

From this failure, Pratt opines *"It appears that her failure to provide universal notice to her supervisors was a barrier to coordinated action by senior management."* Pratt Report, P. IL000049, Para 1.

Pratt then describes an incident in a lower level management meeting in which a manager dismissed the rope has a hangman's noose "because it did not have thirteen

knots." Pratt states: *"Had [global corporate HR manager, Webb's boss] Mr, McDonald in corporate HR known about the noose in time it is likely that this t}:pe of management attitude would have been suppressed in favor of appropriately prompt and concerted action in response to a serious incident of racial intolerance in the workplace. "* Pratt Report, P. IL000049, Para 1.

Pratt opines *"In my experience, an employer's weak or indifferent response to a serious event in the workplace can embolden perpetrators to commit similar or even more outrageous offenses."* Pratt Report, P. IL000049, Para 3.

Pratt concludes this section of the report by stating; "There was no management response on the part of FMC to indicate that anyone cared about making workers who were feeling targeted and upset by a serious act of racial intolerance feel safer and more secure in the workplace." Pratt Report, P. IL000049, Para 3.

### Pratt's Opinion No. 2 - Failure to Engage Third Party Contractors

Pratt prefaces his opinion with this;

> Employees who are placed at a worksite by a temporary employment agency like the various third party contractors used by FMC create a special challenge for HR representatives due to the "shared employer" concept. When two employers both have employees working in the same workplace, both employers must implement their respective HR policies to honor their commitments to protect workers from unlawful harassment and discrimination. Pratt Report, P. IL000050, Para 1.

Pratt states that in his opinion an employer has;

> "[A]n absolute duty to ensure that all individuals subject to the employer's control and direction in the workplace -whether they are employees, temporary workers, contract workers~ or volunteers - understand the . understand the rules and policies that govern their conduct in the workplace." Pratt Report, P. IL000050, Para 4

Pratt points out that according to Ms. Webb and Mr. McDonald, " FMC management did not begin checking on the BEO compliance policies and practices of its third party contractors until after the second noose incident. which occurred on October 25, 2007. " Pratt Report, P. IL000050, Para 2. In Pratt's opinion, this was a significant

failure;

> This failure to inform non-employees is significant because after investigating the two noose incidents in September and October 2007, FMC determined that workers from third party contractors were responsible for or had some involvement in both incidents. No FMC employees were implicated in either of these two incidents of racial intolerance. Had FMC engaged each of its third party contractors in a coordinated effort to achieve conformity of EEO compliance standards at the beginning of the contract relationship, the perpetrators of the second noose incident would have been forewarned as to the potential for receiving aggressive sanctions for their actions. Pratt Report, P. IL000051, Para 2.

Pratt noted that FMC had established systems for the evaluation and performance related discipline of non-employee workers.   Pratt opined that "the failure to take similar steps" to assure that employees of third party contractors "would be held to the same standard of conduct that applied to FMC employees was a failing of some consequence..." Pratt Report, P.  IL000050, Para 4.

### <u>Pratt's Opinion No. 3</u> -     <u>Failure to Investigate Workplace Issues Arising from Employee Interviews</u>

In March/April 2008 and May 2008, FMC Human Resources staff conducted interviews of FMC employees following two separate hangman noose incidents. In each case, information was uncovered which was not followed up on, such as "racist graffiti on the walls of the men's room at the company cafeteria, including references to wetbacks." Pratt Report, P. IL000052, Para 4) that merited further investigation and allegations by an African American "that Caucasian employees with less job experience had been promoted over him." Pratt Report, P. IL000052-000053.

FMC, through Mr. McDonald,  defended this, in part, by stating that one of the claims had been examined before and found unsubstantiated. McDonald conceded that no inquiry had been made into another allegation revealed in the interview (i.e., African Americans required to train other employees who received promotions denied them). Pratt gave the following opinion:

> I believe that FMC failed to carry out its duty to investigate the

issues regarding alleged unfair practices in hiring, training. and promotions arising from these two sets of interviews in 2008. In my opinion, it was not reasonable for FMC managers to decline to take action because prior investigations of similar claims had shown them to be unsupported by the facts at hand at the time. The two series of interviews provided HR personnel with details on employee allegations having an adverse effect on the perception of fairness and EEO compliance in the workplace. Even if FMC believed that the allegations ultimately would prove to be unsupported by employer records on hiring, promotions., and training opportunities. the common themes in the two sets of interviews identified the issues that FMC needed to examine and then find ways to address and /or resolve. Pratt Report, P. IL000053,, Para 4.

The failure to act on the issues raised in the interviews was "the product of inattention to usual and customary HR management principles[.]" Pratt Report, P. 10, Para 5.

### Pratt's Opinion No. 4 -   Failure to assert leadership in addressing workplace issues

Pratt stated in his report that: "The materials I reviewed demonstrate a failure of leadership that is inconsistent with the professional ethics and goals of trained HR specialists subject to the purview of SHRM and similar organizations." P. 11, Para 2.

**3.   PRATT'S  EXPERT OPINION  TESTIMONY SHOULD BE ADMITTED**

**A.   TESTIMONY OF HUMAN RESOURCES EXPERTS ARE GENERALLY ADMISSIBLE**

Defendant FMC contends that "Human Resources" or, as it was once called "Personnel Management" is not a proper subject for expert opinion testimony because it is a field that cannot be approached with scientific rigor.

The decision to admit expert testimony lies within the District Court's sound discretion and will not be overturned unless manifestly erroneous.  **United States v. Wiley** (5th Cir, 1995) 57 F.3d 1374, 1389. To be admissible, an expert's opinion must  be helpful to the trier of fact.  F. R. E. 702.

Testimony of a human resources professional, or any expert,  becomes problematic when the expert's opinion invades the province of the jury. "Trouble

is encountered only when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." <u>Scott v. Sears, Roebuck & Co.,</u> (4th Cir, 1986) 789 F.2d 1052, 1055.

Problems also arise when the expert's opinion is phrased as an "ultimate legal conclusion," as such conclusions invade the jury's province to apply the applicable law to the facts of the case and reach ultimate legal conclusions. <u>United States v. Bilzerian,</u> (2d Cir, 1991) 926 F.2d 1285, 1294.

Notwithstanding the fact that Human Resources may not be a hard science, in the sense that ballistics or geology are, there is little controversy that testimony from Human Resource experts is generally admissible. <u>Nieves Villanueva v. Soto Rodriguez,</u> (1st Cir, 1997) 133 F.3d 92, 99.

**B.**     <u>PRATT SHOULD BE QUALIFIED TO TESTIFY AS AN EXPERT ON HUMAN RESOURCES MATTERS</u>

The Defendant attacks Craig Pratt's qualifications as an expert. As his curriculum vitae shows, he has been a principal in Craig Pratt & Associates, Inc for 24 years. In that capacity he has served as a "consultant in all areas of human resources management policy, procedure and practice including: Development of employee policies; Recruitment/Selection; Training managers and supervisors; and Fair employment practices." Pratt Report, P. IL000059. His professional certification and licensing consists of "Senior Professional Human Resources Certification awarded by the Human Resources Certification Institute. Pratt Report, P. IL000060. He has numerous publications. In his capacity as a human resources professional he has been retained as a human resources management expert in 800 federal and state cases, and has provided trial qualified expert testimony on 65 occasions. Pratt Report, P. IL000059.

These qualifications compare favorably to those of the expert (Adams) qualified in <u>Pittman v. General Nutrition Corp</u> (SD Tx, 2007) 2007 U.S. Dist LEXIS 22389. Both Adams and Pratt have similar educational experiences (A bachelor and masters degree).

They both operate Human Resources consulting businesses and each has testified numerous times in trial.[1]

## C.   **PRATT'S TESTIMONY IS PROPER**

Pratt's opinion does not purport to opine on the law or the employer's legal obligations, which is "rarely admissible." **Nieves Villanueva v. Soto Rodriguez**, supra, 133 F.3d at 99.

Nor does Pratt testify in terms of legal conclusions. In **Rieger v. Executive Honda** (D.Conn, 2006) 427 F.Supp.2d 99, 103-104 testimony by an expert that "defendants could have accommodated plaintiff's disability without significant impact, but instead retaliated against plaintiff by moving her to a less desirable position" was held impermissible in that the

> "[O]pinion does not proffer any specialized knowledge, and invokes legal standards (i.e., that defendants could have accommodated plaintiff's disability without significant impact, and that defendants retaliated against plaintiff), his opinion would "not aid the jury in making a decision, but rather attempts to substitute [his] judgment for the jury's." [Citation]. Id.

The **Rieger** Court, in dicta, stated that the expert could properly "opine on accommodations that could have been made, or are frequently made, to accommodate the disability." Id at 103. Such an opinion would enable to jury to then decide whether or not the Defendants could have accommodated the disability.

Here, Craig Pratt's report provides information as to what the employer could have done in response to the discovery of the September 2007 noose or in response to the interviews of employees that disclosed allegations of discrimination. Pratt does not, however, say that the employer did or did not exercise reasonable care in preventing harassment in the work place. Pratt's testimony simply provides information from which the jury could decide that question.

Likewise, in **Pittman v. General Nutrition Corporation** (SD Tx, 2007) 2007 U.S.

---

[1]Interestingly, Adams - who had no apparent expertise as an economist, was allowed to testify as one - albeit to a very limited extent. Pratt will be providing any  economics based testimony [See below].
Bryant v. FMC, Case No. 04:08-CV-03744
Plaintiffs' Opposition to FMC  Motions in Limine re Experts

Dist. LEXIS 22389, a human resources expert was not allowed to testify that the employer "intentionally discriminated" against plaintiffs and that the employer's explanation was "nothing more than a poorly fabricated pretext to avoid having to promote [the plaintiff]" on the grounds that these were legal conclusions. Id at *13.

In addition, some of the expert testimony in **Pittman,** was inadmissible because it "invaded the province of the jury." Among other examples cited by the **Pittman** Court is "[the] failure to promote Mr. Demeke ... provides proof that GNC made discriminatory employment decisions toward Mr. Demeke." Id at *12-13.

On the other, hand the **Pittman** expert was allowed to testify that:

> GNC's decision to fill the DVP position allegedly offered to Pittman with another candidate whom GNC had fired some time before for poor work performance is a violation of GNC's own policy against rehiring applicants who were previously fired "for cause." Id at 14-15.

This was allowed because "it is a matter within Adams expertise" and "is outside many jurors' experience." Id at 15.

Here, Pratt offers opinions that are within his expertise and outside the juror's experience. [E.g. as to the failure to engage third party' contractors in EEO compliance issues]. However, nowhere does Pratt make any of the sort of legal conclusions criticized in **Pittman** (e.g. as to FMC intentionally discriminating) nor does he purport to lecture the jury on the law, as happened in **Nieves Villanueva,** nor does he offer a factual opinion as encountered in **Pittman** .

## D.      THE OTHER CHALLENGES TO PRATT'S TESTIMONY SHOULD BE REJECTED

Defendant FMC's claim that Pratt's testimony is irrelevant must be summarily rejected. FMC is relying on the defense of remediation. One of the elements of that particular defense is; "[Whether] the employer exercised reasonable care to prevent and correct promptly any [racially] harassing behavior [.]" **Walker v. Thompson,** (5th Cir, 2000) 214 F.3d 615, 626. Pratt's testimony is relevant because it directly addresses that element.

Defendant FMC also claims that admission into evidence of Pratt's testimony

would be unfairly prejudicial and should be excluded pursuant to FRE 403.  This challenge should be rejected as well.

The Advisory Committee Notes to FRE 403  explains unfair prejudice means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  This is not the case with Pratt's proffered testimony at all.  His testimony is relevant as to the remediation defense. If the jury believes him, it will certainly prejudice FMC. But, because of its direct relevance it is not excludable under Rule 403.

> Relevant evidence is inherently prejudicial; but it is only
>  unfair prejudice, substantially outweighing probative value,
> which permits exclusion of relevant matter under Rule 403.
> Unless trials are to be conducted as scenarios, or unreal facts
> tailored and sanitized for the occasion, the application of
> Rule 403 must be cautious and sparing. Its major function is
>  limited to excluding matter of scant or cumulative probative
> force, dragged in by the heels for the sake of its prejudicial effect.
> **United States v. Mills,** (11th Cir, 1983) 704 F.2d 1553, 1559.

Finally, FMC objects to the evidentiary basis for Pratt's opinions because he did not review the depositions of the Plaintiffs or other evidentiary matter.  As the **Pittman** court pointed out , the objection to the factual foundation for an expert's opinion "– where [it] relates to the weight to which his testimony is entitled, [is] an assessment the jury can perform at trial."   2007 U.S.Dist LEXIS 22389*17.

## 4.   DR LEHRER'S TESTIMONY SHOULD BE ADMITTED

Finally, Defendant FMC objects to the testimony of Plaintiffs' economist, Dr. Kenneth Lehrer. See Robinson Declaration, Exhibit A  Expert Witness Disclosure, Report of Kenneth Lehrer,("Lehrer Report") IL000004- IL000043.

FMC does not challenge Lehrer's credentials, for good reason given that they are substantial. Lehrer Report IL 000029-000043.

FMC does complain that Lehrer's report consists of simple calculation of damages, based upon the numbers available to him.  Given that witnesses with no economics qualification have been permitted to opine on a parties monetary losses [E.g. Pittman, supra, 2007 U.S. Dist LEXIS 22389 at *20-21.  through use of mathematical

calculation, it is hard to see how an undeniably qualified economist, as Dr. Lehrer is, can be precluded from giving similar testimony.

FMC also complains that Lehrer's opinion should be excluded because it relied upon information provided him by the Plaintiffs. That fact alone cannot justify the exclusion of his testimony. See. Pittman, supra, 2007 U.S. Dist LEXIS 22389 at *16-17 {".... Adams is entitled to rely on Plaintiffs' versions of events.']   In fact, Lehrer largely relied on pay stubs and W-2s issued by FMC itself.

Lehrer's opinion should not be excluded.

5.   **CONCLUSION**

For all the reasons stated above, Defendant FMC's motion to exclude expert opinion testimony should be denied

Respectfully Submitted,

Date: October 8, 2010         THE LAW OFFICES OF JOSEPH L. ALIOTO &
                              ANGELA ALIOTO


                              _/s/ Angela Alioto_____
                              ANGELA ALIOTO, California Bar No. 130328
                              Southern Texas US  District Bar No. 957811
                              Attorney-in-Charge
                              **Law Offices of Mayor Joseph L. Alioto**
                              **& Angela Alioto**
                              700 Montgomery Street
                              San Francisco, CA  94111
                              Telephone: (415) 434-8700
                              Facsimile: (415) 438-4638
                              THE LAW OFFICES OF JOSEPH L.
                              ALIOTO & ANGELA ALIOTO